JAMES BUCKLEY, CLAIMANT OF THREE BALES AND EIGHT CASES OF CLOTH, PLAINTIFF IN ERROR, v. THE UNITED STATES.

In the trial of a cause where goods had been seized upon suspicion of being fraudulently imported, it was proper to allow to go to the jury, as evidence, appraisements of the goods made either by the official appraisers or appraisers acting under an appeal, they being present to verify the papers. The objection that the appraisements had not been made in presence of the jury was not sufficient.

Such papers are documents or public writings, not judicial, and may be used as evidence, under the rules which regulate all that class of papers.

Other invoices of other goods imported by the party are admissible. The decision on this point in Wood v. The United States (16 Peters, 359, 360) confirmed.

It was proper to show, in such a case, that the agent of the claimant had sold goods for him at prices which yielded profits, which other persons, engaged in the same trade, averred could not fairly have been made in the then state of the market.

The court is the tribunal to determine, from the evidence, whether or not there was probable cause for the seizure.

In order to sustain counts in the information, founded on the acts of 1830 and 1832, it is not necessary that they should contain averments of the special circumstances of the examination of the goods and detection of the fraud under the authority of the collector. The language of the court in Wood's case reëxamined, explained, and controlled.

The court below was right in instructing the jury, that, under such an information, they were not restricted in the condemnation of the goods to any entered goods which they found to be undervalued, but that they might find either the whole package or the invoice forfeited, though containing other goods correctly valued, provided they should find that such package or invoice had been made up with intent to defraud the revenue.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Eastern District of Pennsylvania.

On the 16th of August, 1839, Patrick Brady, a resident of the city of Philadelphia, presented to the custom-house in that city an entry of certain goods which had arrived from Liverpool, in the ship Franklin. Accompanying the entry was the oath of James Buckley, the present claimant, taken at Liverpool, on the 8th of June, 1839. It was what is called the manufacturer's oath, as contradistinguished from the purchaser's oath, and stated the value, the purchaser's oath stating the actual cost, of the goods. The bill of lading was for three bales, marked P. B., 810, 811, 812, and eight cases, marked P. B., 813 to 820, which were consigned to the said Patrick Brady.

These goods were ordered to be appraised by the two regularly

appointed appraisers for the port of Philadelphia, namely, Thomas Stewart and Henry Simpson. The examination was not finished until the 25th of September, 1839 ; the result of which was an appraisement of £ 1,917, the invoice being £ 1,647.

On the 15th of February, 1840, the claimant, being then in England, made out a copy of the invoice of the goods in question, to which he annexed a purchaser's oath, stating the goods to have been purchased on the 28th of May, 1839, from William Buckley and Company.

On the 25th of May, 1840, the claimant appealed from the decision of the official appraisers, in the manner pointed out in the act of Congress providing for an appeal, when Samuel Ross and A. J. Lewis were appointed to make an appraisement On the 22d of June, 1840, they took the oath required by law, and proceeded to make the valuation.

About this time, but the record does not state exactly when, the agent of the claimant filed in the custom-house at Philadelphia the purchaser's oath just spoken of.

On the 22d of June, 1840, the appraisers, Ross and Lewis, who had been appointed under the appeal to appraise the goods, took the necessary oaths and proceeded to execute the duty. The result was, that their appraisement was seventeen per cent. higher than the value as stated in the invoice.

On the 28th of September, 1840, an information was filed against the goods in the District Court for the Eastern District of Pennsylvania. It consisted of four counts.

The first was founded on the sixty-sixth section of the act of 1799.

The second, upon the fourth section of the act of 1830, and charged that the invoice was made up with intent, by a false valuation, to evade and defraud the revenue of the United States.

The third, upon the same section of the same act, charging that each of the several packages was made up with intent, &c.

The fourth, upon the fourteenth section of the act of 1832, charging that the goods were composed wholly, or in part, of wool or cotton, and that all and each of the several packages in the invoice were made up with intent, &c.

As these counts are the subject-matter of a part of the decision of the Supreme Court, it is proper to insert them *in extenso*.

In the District Court of the United States of America, in and for the Eastern District of Pennsylvania.

EASTERN DISTRICT OF PENNSYLVANIA, *ss*.:

Be it remembered, that, on this twenty-eighth day of September, in the year of our Lord one thousand eight hundred and forty, into the District Court of the United States of America, in and for the Eastern District of Pennsylvania, comes John M. Read, attorney

of the said United States of America, and prosecuting in their name and on their behalf, and gives the said court here to understand and be informed, that, on the twenty-fourth day of June, in the year aforesaid, at the city of Philadelphia, in the Eastern District of Pennsylvania, and within the jurisdiction of this court, the following goods, wares, and merchandise, to wit : —

Three bales of cloths, marked P. B., 810, 811, 812, and eight cases of cloth, marked P. B., 813, 814, 815, 816, 817, 818, 819, 820, were seized on land by Calvin Blythe, Esq., collector of the customs of the port and district of Philadelphia, in the said Eastern District of Pennsylvania, and are now in his custody, as being forfeited, for the causes hereinafter mentioned, to wit : —

1. That the aforesaid goods, wares, and merchandise are of the growth, produce, and manufacture of some foreign place or country, to the said attorney unknown ; and were heretofore, to wit, on the sixteenth day of August, in the year of our Lord one thousand eight hundred and thirty-nine, brought or imported in a ship or vessel, being a ship called the Franklin, from a foreign port or place, to wit, the port of Liverpool, to the port of Philadelphia, in the collection district of Philadelphia, in the Eastern District of Pennsylvania, which said goods, wares, and merchandise are subject to the payment of duties to the United States, on being brought and imported as aforesaid.

That an entry of the aforesaid goods, wares, and merchandise, duly signed, was, at the time of said importation thereof, made at the office of the collector of the customs of the said port and district of Philadelphia ; and that, on such entry being made as aforesaid, an invoice of the goods, wares, and merchandise included in such entry was produced, and left with the said collector of the customs of the port and district of Philadelphia.

And the said attorney further avers, that the aforesaid goods, wares, and merchandise, which were so entered as aforesaid, and of which an invoice was so produced and left as aforesaid, were not invoiced according to the actual cost thereof at the place of exportation, but, on the contrary, were in fact invoiced at less sums than the actual cost thereof at the place of exportation, with design to evade the duties thereupon, or some part thereof, against the form of the act of Congress in such case made and provided.

2. That the aforesaid goods, wares, and merchandise, being subject to the payment of *ad valorem* duties to the United States, an entry thereof, duly signed, was, at the time of the importation thereof, made at the office of the collector of the customs of the said port and district of Philadelphia, and that, on such entry being made as aforesaid, an invoice of the goods, wares, and merchandise included in such entry was produced and left with the said collector of the customs of the said port and district of Philadelphia.

And the said attorney further avers, that the said invoice, so produced and left as aforesaid, was made up with intent, by a false valuation, to evade and defraud the revenue of the United States, against the form of the act of Congress in such case made and provided.

3. That the aforesaid goods, wares, and merchandise, being subject to the payment of *ad valorem* duties to the United States, an entry thereof, duly signed, was, at the time of the importation thereof, made at the office of the collector of the customs of the said port and district of Philadelphia; and that, on such entry being made as aforesaid, an invoice of the goods, wares, and merchandise included in the said entry was produced and left with the said collector of the customs of the said port and district of Philadelphia:

And the said attorney further avers, that all and each of the said several packages contained in the said entry so made, and in the invoice so produced and left as aforesaid, in which the aforesaid goods, wares, and merchandise were so imported and entered as aforesaid, was made up with intent, by a false valuation, to evade and defraud the revenue of the United States, against the form of the act of Congress in such case made and provided.

4. That the aforesaid goods, wares, and merchandise, being composed wholly or in part of wool or cotton, an entry thereof, duly signed, was, at the time of the importation thereof, made at the office of the collector of the customs for the port and district of Philadelphia; and that, on the said entry being made as aforesaid, an invoice of the said goods, so as aforesaid composed wholly or in part [of] wool or cotton, included in such entry, was produced and left with the said collector of the customs of the said port and district of Philadelphia.

And the said attorney further avers, that all and each of the several packages in the said invoice so produced and left as aforesaid, and in the said entry so much as aforesaid, in which the aforesaid goods were so imported as aforesaid, were made up with intent to evade and defraud the revenue of the United States, against the form of the act of Congress in such case made and provided.

By reason of all which the premises and the acts of Congress in this behalf made and provided, the said goods, wares, and merchandise have become and are forfeited.

Wherefore, the said attorney prays the aid and the advice of the said court here in the premises, and due process of law for the condemnation thereof.

JOHN M. READ,
*United States Attorney for the Eastern District of Pennsylvania.*

The acts of Congress upon which these counts are founded are as follows : —

The sixty-sixth section of the act of 1799, chapter 22, provided, —

" That if any goods, wares, or merchandise, of which · entry shall have been made in the · office of a collector, shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, wares, and merchandise, or the value thereof, to be recovered of the person making the entry, shall be forfeited."

The fourth section of the act of 1830, chapter 147 (4 Lit. & Brown's ed. 410), provided, —

" That the collectors of the customs shall cause at least one package out of every invoice, and one package at least out of every twenty packages of each invoice, and a greater number should he deem it necessary, of goods · imported into the respective districts, which package or packages he shall have first designated on the invoice, to be opened and examined, and if the same be found not to correspond with the invoice, or to be falsely charged in such invoice, the collector shall order, forthwith, all the goods contained in the same entry to be inspected ; and if such goods be subject to *ad valorem* duty, the same shall be appraised, and if any package shall be found to contain any article not described in the invoice, or if such package or invoice be made up with intent, by a false valuation or extension, or otherwise, to evade or defraud the revenue, the same shall be forfeited ; " (then follows a repeal of the fifteenth section of · the act of 1823, and of any act which imposes an additional duty or penalty of fifty per cent. upon goods appraised above their invoice price ;) " and no goods liable to be inspected or appraised as aforesaid shall be delivered from the custody of the officers of the customs, until the same shall have been inspected or appraised, or until the packages sent to be inspected or appraised shall be found correctly and fairly invoiced and put up, and so reported to the collector ; provided," &c., &c., &c.

The fourteenth section of the act of 1832, chapter 224 (4 Lit. & Brown's ed. 593), provided, —

" That whenever, upon the opening and examination of any package or packages of imported goods, composed wholly or in part of wool or cotton, in the manner provided by the fourth section of the act for the more effectual collection of the impost duties, approved on [the] 28th day of May, 1830, the said goods shall be found not to correspond with the entry thereof at the custom-house ; and if any package shall be found to contain any article not entered, such article shall be forfeited ; or if the package be made up with intent to evade or defraud the revenue, the package shall be forfeited ; and so much of the said section as prescribes a forfeiture of goods found not to correspond with the invoice thereof be, and the same is, hereby repealed."

On the 7th of October, 1840, Buckley filed his claim, and on

the 13th of December, 1842, the cause came on for trial.    In the course of it, the counsel for the claimant took nine exceptions to the admissibility of certain evidence offered in support of the prosecution, which may be stated as follows.

1. The first exception was to the admissibility of Thomas Stewart to prove an appraisement of the goods made by him as one of the official appraisers of the port ; to which testimony the counsel for the claimant objected, that the appraisement was not made in presence of the court and jury.

2. Was to the admissibility of the appraisement.

3. Was to the admissibility of the testimony of Felix A. Huntingdon, an importer and experienced judge of goods, to prove what was the value, in his belief, of the goods in the British market at the date of the invoice upon which they were entered ; the ground of the objection being, that the appraisement was not made in the presence of the jury.

4. Was to the admissibility of the affidavits of Samuel Ross and A. J. Lewis, who had appraised the goods under an appeal, taken by them before entering on the performance of their duty as appraisers under the appeal.

5. Thereupon the counsel of the United States gave in evidence their appraisement ; and to this the claimant excepted, that the appraisement had not been made in presence of the jury.

6. The counsel for the United States having produced the invoices of two importations — one into Philadelphia, and the other into New York — of goods exported from England by the claimant, whose affidavit was in each case annexed, dated 23d May, 1839, and 12th June, 1839, the counsel for the claimant excepted to the reading of these two affidavits.

7. Several other invoices, affidavits, and entries were offered on the part of the United States, after being verified in the same manner as those mentioned in the last exception ; and to their admission in evidence the counsel for the claimant excepted.

8. The counsel of the claimant also excepted to any evidence being given of certain importations made by the claimant into New York, per Republic and United States, in which cases the value of the goods were appraised at a higher value than the invoices.

9. The counsel for the United States proved that the claimant's factors in Philadelphia had received goods from him to be sold for his account, and had sold the same at prices more, by one hundred and twenty per cent., than the prices entered upon the invoices upon which they had been entered ; and to the admissibility of this testimony the counsel for the claimant excepted.

The evidence being closed on both sides, the counsel for the United States prayed certain instructions, and the court proceeded to charge the jury.    The two following appear to be the passages to which the counsel for the claimant excepted.

The United States allege that the appraisements and the affidavits, and the fact of Mr. Buckley's acquaintance with the different forms of oaths, show his fraudulent intent in this importation; — other invoices of the claimant are also given in evidence to show the same fraudulent design. Fraud is to be judged of by various circumstances. If this were the only case, the presumption might be that there was a mistake; but the United States have presented these various invoices to show that there was no mistake. They have further shown the appraisements and the sales of these other importations by James Buckley at an advance from one hundred and fourteen to one hundred and forty per cent. in the invoice. Whereas eighty-five per cent. advance is a fair profit according to the testimony. These circumstances go to show intention; because, though the goods may be under invoiced, yet, unless fraud was intended, the under valuation will not work a forfeiture. The United States are only bound in the first instance to prove to the court probable cause. I have no difficulty in saying that the United States have abundantly shown probable 'cause; the burden of proof is hence thrown upon the claimant.

It is said, that, although some of the goods were undervalued, some were not so, and should not be condemned. The law is this; if in any particular package the prices of some of them are undervalued, and some of them are fair; if the whole package has been made up by a false valuation with, intent to defraud the revenue, the whole is forfeited. The same is the case with an invoice. Although it may be composed of some packages fairly made up, yet, if the whole invoice has been made up with intent to defraud, the whole invoice will be forfeited. If the cost of the whole invoice offered for entry is made up with intent to defraud, the whole of the goods contained in it are forfeited

The first question for your decision then, is, whether the goods were put in the invoice under their cost or value; if so, whether such undervaluation was with a view to defraud; if this were so, then as to those goods there can be no difficulty; whether the other goods in the invoice are to be forfeited must depend on the intent of the party in making up the invoice.

1st. And thereupon, the counsel for the claimant did except to so much of the said charge as decided upon the question of probable cause as a question of law, taking it entirely from the jury.

2d. And to so much of the said charge as decided that, under the present information, the jury should not be restricted in their condemnation to any restricted goods which they found undervalued; but find, first, either the whole package, or second, the invoice in which they were imported, forfeited, though containing other goods correctly valued; if they should find that such package or invoice had been made up with intent to defraud the revenue of the United States.

And forasmuch as the exceptions aforesaid do not appear of record, the said defendant prayed that the court will sign and seal this his bill of exceptions, which is done accordingly.

ARCHIBALD RANDALL.

Mr. Justice WAYNE delivered the opinion of the court;

Nine exceptions were taken, upon the trial of this cause, to the admissibility of the testimony which was offered on the part of the United States.

The first, second, third, fourth, and fifth are objections to the introduction of the appraisements which were made of the goods entered by the claimant, to the introduction of the persons who made them, to the affidavits of Ross and Lewis, the appraisers upon the claimant's appeal from the official valuation, and to the admissibility of an experienced judge and importer of goods, who was put upon the stand, to prove the value of the goods in the English market, at the date of the invoice, upon which they were entered. The objection in each instance is, that the appraisements had not been made in the presence of the jury. The goods were subject to *ad valorem* rates of duty. The collector, having cause to suspect that they were invoiced below their true value or actual cost, with an intent to evade or defraud the revenue, directed them to be appraised by the official appraisers. From their valuation, the claimant appealed. Ross and Lewis acted as appraisers upon the appeal, and made their estimate of the value or cost of the goods. The originals of both appraisements were returned to the custom-house. It is not denied, that they were made according to the provisions of the acts of Congress. They were so made. From the character of those papers, we think they were admissible. They are documents or public writings, not judicial. As such they may be used as evidence, subject to the rules applicable to the admissibility of such writings as evidence. The originals or examined copies were admissible, as is the case wherever the original is of a public nature. They are within the reach of either party in a cause; either for inspection or for copies, when a copy is wanted to be used as evidence. We need not enumerate the classes of such writings, or the particular kinds of them which from analogy have been adjudicated to be such, as both may be found in any of the elementary treatises upon evidence. There is authority for so classing these appraisements. It has been decided, that a copy of an official document, containing an account of the cargo of a ship, made in pursuance of an act of parliament by an officer of the customs and lodged there as an official document, should be admitted as proof that the property mentioned in it was put on board of a vessel. So, also, the copy of an official document containing the names, capacities, and descriptions of passengers on board a vessel, made in pursuance of an act of parliament, has been received as

proof of such persons being on board.  Richardson v. Mellish, 1 Ryan & Moody, 68 ; 2 Bing. 229.

In this instance, the counsel for the United States offered the originals of the appraisements, at the same time introducing the persons by whom they were made, as witnesses to authenticate them. They were not offered as conclusive of the cost or value of the goods, or as conclusive that an attempt had been made to enter them with an intent to evade or defraud the revenue. They might, with other evidence, conduce to establish those facts, and there is no doubt they were in part used for such a purpose in this case. But the primary object was to show from them, with other testimony, that there was probable cause for the seizure, that a course had been taken by the collector which the law permitted, and that every thing had been done to give to the claimant the opportunity of establishing the fairness of his suspected entry.   What we have said of the character of the appraisements is equally applicable to the objection to the admissibility of the affidavits of Ross and Lewis, by whom the goods were appraised upon the appeal. There is no force, then, in the objection, that the appraisements were not made in the presence of the jury.   We have thus disposed of the first five exceptions to the admissibility of the evidence, for we do not understand that any objection was made to Stewart and Huntingdon as witnesses to prove, from their knowledge of the value of goods, what was the value of the goods in question, but that they were objected to, as it is expressed in the exception, because the appraisements made by them were not made in the presence of the jury.   As experienced judges of goods and of their value, they were certainly good witnesses to testify what in their belief was the value of the goods in the English market, at the date of the invoice upon which they were entered.   The sixth, seventh, and eighth exceptions were objections to the admissibility as evidence of other invoices of other importations made by the claimant, to show fraud in this case.   Such invoices for the same purpose were decided by the court in Wood's case (16 Pet. 359, 360) to be admissible.   It is not necessary to repeat what was then said upon the subject.   The ninth exception is an objection to the introduction of any evidence to show that the factors of the claimant had sold goods for him at more than one hundred and twenty per cent. above the invoice prices.   We know that the prices of commodities fluctuate from many causes, and that enhanced prices can of themselves be no proof of unfair dealing, or of an entry having been made at the custom-house upon an undervalued invoice.   But if in a particular business testimony can be found to establish that an importer has received prices extravagantly above invoice prices, such as others engaged in the same trade, at the same time, declare could not have been made in the state of the market during the time, a strong presumption arises that unfair means have been used

to produce effects contrary to the usual results of contemporary trade. Such a fact may well, then, be considered as good evidence, when the issue in a case is fraud or no fraud in the importation of goods.

The exceptions taken to the evidence having been disposed of, we proceed to examine such as were taken to the charge of the court. The first, that the court had undertaken to determine from the evidence that there was probable cause for the seizure, without submitting it to the jury, was abandoned in the argument. This court had ruled in Taylor *v.* The United States, 3 Howard, 211, that the judge, and not the jury, was to determine whether there was probable cause, so as to throw on the claimant the *onus probandi* to establish the fairness of the importation.

The second exception is an objection to so much of the charge of the court as instructed the jury, that, under the present information, they were not restricted in their condemnation to such goods as they should find had been undervalued, but that they might find either the whole package or the invoice forfeited, though it contained other goods correctly valued, if they were of the opinion, that such package or invoice had been made up with intent to defraud the revenue of the United States.

The information contained four counts. The first, upon the sixty-sixth section of the act of 1799, to which the exception does not apply. The second and third counts were framed upon the fourth section of the act of 1830, ch. 147 ; and the fourth upon the fourteenth section of the act of 1832, ch. 227. The objection is not meant to deny the liability of the goods to forfeiture in a case made out under either of those acts, from any conflict between them, or from either being a repeal of the other in any particular, so as to exempt the goods from condemnation. But the exception is confined to the insufficiency of the averments in the second, third, and fourth counts to enforce a forfeiture. The language of the counsel in argument was, that the second, third, and fourth counts of the information are defective on account of the uncertainty and generality of the averments in each and every of them, and that the judgment ought therefore to be reversed. The uncertainty complained of is, that there is not in either of the three counts an averment of the special circumstances of the examination of the goods and detection of the fraud, under the authority of the collector. In support of the objection, the counsel relied chiefly upon this court having said in Wood's case, that such an averment was necessary to enforce a forfeiture under the fourth or fourteenth sections of the acts of 1830 and 1832. Pressed as it was with other arguments in support of the position, the preparation of this opinion has been delayed, with the view of giving to the objection the most deliberate examination. Having made it, by a close scrutiny of all the acts of Congress which have been passed to prevent frauds upon the revenue ; by a comparison of what has been the practice in our own courts,

upon informations of a like character under those acts, and of what have been, both in England and in our own country, declared to be essential allegations in informations for offences against the revenue arising from foreign trade, we have concluded that the language in Wood's case is stronger than it should have been. It was used argumentatively to show that the sixty-sixth section of the act of 1799 had not been repealed by the fourth and fourteenth sections of the acts of 1830 and 1832 ; and it was assumed in the argument, that certain allegations were proper in a count under the last two sections, which were not necessary and would not be suitable in a count under the sixty-sixth section. In that section, goods not invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties, are subject to forfeiture. They are so, whether the undervaluation shall be discovered after they have been entered and passed from the custom-house, or whether there has or has not been an examination of them. But then, under that section, *only* such of the goods not invoiced according to actual cost, without any reference to the contents of the package in which they may be, or to the entire invoice of which they may form a part, *are subject to forfeiture.* It is neither necessary nor proper, then, as was said in Wood's case, in a count under that section, to allege the circumstances which led to the detection of the fraud. But it is said that previous examination and a consequent appraisement must be made under the fourth section of the act of 1830, and under the fourteenth section of the act of 1832, in the manner directed in the former ; and therefore it is necessary, in a count under either of them, to aver that both were done. That, however, is only one of the ways which the collector may pursue, under existing laws, for the purpose of securing the payment of lawful duties, by detecting intended frauds upon the revenue. The object of an examination by packages, under the fourth section of the act of 1830, is for the purpose of ascertaining whether or not either of the causes mentioned in it exist to make it the duty of the collector to have all the goods in the same entry inspected and appraised, but he is not confined to one package out of every invoice, or to one out of every twenty packages of each invoice. He may examine a " greater number " of packages should he deem it necessary, extending the examination to every package in the invoice. If, before that course has been taken, the collector suspects the entry to be fraudulent as a whole, or any package of it to be falsely charged, he can, without any designation of particular packages, have all the goods inspected and appraised. Or, in making an appraisement under the seventh and eighth sections of the act of 1832, ch. 227, he may direct it to be done with reference to the detection of an apprehended fraud of any kind whatever, as well as to those particulars mentioned in the fourth and fourteenth sections of the acts of 1830 and 1832, which, when discovered and proved to the satis-

faction of a jury, attaches a forfeiture either to a package of an entry, or to the entire invoice. The fourth and fourteenth sections direct the collector how he is to act in one way to detect frauds upon the revenue. But one mode of prevention, without restrictive terms, limiting an examination and appraisement of goods to that mode, does not imply that other lawful means shall not be used to produce the same result. If the frauds, for which the fourth and fourteenth sections declare there shall be a forfeiture, shall be discovered, in any way of making an appraisement differing from the manner of examining goods under the fourth section of the act of 1830, no one can be found to say that the forfeiture would not attach, without any reference to the means by which the fraud was discovered. It follows, then, that the mode of making an examination is not confined to that mentioned in the fourth section of the act of 1830, and that the averment of it is not essential in a count under either of the sections of the law upon which the present information was framed. Without such an averment, a count under the fourth section of the act of 1830, and fourteenth section of the act of 1832, stating time and place, and such circumstances or particulars of those sections that a correction or acquittal might be given in evidence to prevent another information for the same offence, would be sufficient to prevent the judgment from being arrested upon a motion for that purpose. We think there was no error in the court having instructed the jury, that, under the information in this case, they were not restricted in the condemnation of the goods to any entered goods which they found undervalued, but that they might find either the whole package or the invoice forfeited, though containing other goods correctly valued, if they should find that such package or invoice had been made up with intent to defraud the revenue of the United States.

The judgment in the court below is affirmed.