## ONE PLYMOUTH AUTOMOBILE, etc., et al. v. UNITED STATES.

### No. 12019.

Circuit Court of Appeals, Fifth Circuit.

Dec. 31, 1947.

Rehearing Denied March 1, 1948.

See 166 F.2d 431.

T. Gilbert Sharpe, of Brownsville, Tex., for appellants.

Leavenworth Colby, Atty., Admr. & Shipping Section, Dept. of Justice of Washington, D. C., and Brian S. Odem, U. S. Atty., and Joseph W. Cash, Asst. U. S. Atty., both of Houston, Tex., for appellee.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a judgment of forfeiture and sale of one Plymouth coupe and forty-two tires. The statutes upon which the seizure, detention, and forfeiture were based are the Espionage Act of 1917, as amended, 22 U.S.C.A. § 401 et. seq., and the Export Control Act of 1940, as amended, 50 U.S.C.A.Appendix, § 701 et. seq.

The libel of information charged that the claimants were exporting, intending to export, and attempting to ship and take out of the United States, said merchandise,

in violation of said Export Control Act of 1940. More specifically, the libel charged that Napoleon G. Riviera was exporting and attempting to ship out of the United States at the port of Brownsville to Mexico 42 described automobile tires without complying with the Act of July 2, 1940; that is, without a license to do so. It was alleged that they were contained at the time in a described Plymouth coupe. These allegations were squarely denied in a claim filed by Riviera and Rodolfo Gonzales, the former claiming the coupe and the two tires in it, and the latter claiming the other tires.

The defendants demanded a trial by jury, and a jury was impaneled. After the evidence was in, the judge charged the jury that they had but one issue of fact to decide, and submitted a single written question: "Do you find from a preponderance of the evidence that the tires seized by the customs official *at the filling station* of Napoleon G. Riviera * * * were intended by Rodolfo Gonzales to be taken out of the United States * * * without first obtaining an export license therefor?" The jury answered, "He did." On that sole verdict the judge made a judgment forfeiting all the tires and the coupe. The evidence is clear that all the tires seized at the filling station were those claimed by Gonzales, and that the two tires claimed by Riviera were seized previously a mile away at the bridge which leads into Mexico, being in his coupe there. The verdict therefore relates only to the claim of Gonzales.

■ 1. The record on its face shows that there is no verdict on the claim of Riviera. He has not had the trial by jury which he demanded. The very statute under which forfeiture is claimed, the Espionage Act of 1917, provides in Section 5 that on demand there shall be a "trial by jury of any issue of fact joined in such libel cases." 22 U.S.C.A. § 405. In common law cases involving over $20, a jury trial is a constitutional right; and from the beginning it has been established that, though all seizures for forfeiture are to be prosecuted by libel *in rem* according to admiralty practice, seizures on land are not admiralty cases but *common law informations,* in which a jury trial is demandable. The Sarah, 8 Wheat. 391, 5 L.Ed. 644; Union Life Ins. Co. v. United States, 6 Wall. 759, 18 L.Ed. 879; Confiscation Cases, 7 Wall. 454, 19 L.Ed. 196; 443 Cans of Frozen Eggs, 226 U.S. 172, 33 S.Ct. 50, 57 L.Ed. 174.

■ In Baylis v. Travelers Ins. Co., 113 U.S. 316, 5 S.Ct. 494, 497, 28 L.Ed. 989, after recognizing that an instructed verdict would have been proper practice if there could be but one verdict, the court held: "Without a waiver of the right of trial by jury, by consent of parties, the court errs if it substitutes itself for the jury, and, passing upon the effect of the evidence, finds the facts, involved in the issue and renders judgment thereon. This is what was done in the present case. It may be that the conclusions of fact reached and stated by the court are correct, and, when properly ascertained, that they require such a judgment as was rendered. That is a question not before us." In the present case, the judge ignored the jury in Riviera's claim and condemned his tires and car without any verdict, instructed or otherwise, respecting them. This is error on the face of the record.

■ It is said that Riviera's own testimony would compel a verdict against him. If so, a verdict against him regularly directed might have been had, but was not. It is true that Riviera testified that the two tires were found in the tire compartment of his coupe, out of sight, and that he had with him a girl friend with whom he was about to go across the river to take supper; but he also testified that he had not put the tires in the car and did not know they were in there; that they must have been put there by an employee who had used the car in the United States; and that he had no purpose at all of taking them into Mexico. This raises the question whether an accidental and unintentional carrying out of the United States of a small amount of unlicensed property, which would have been returned in an hour or two, should forfeit the vehicle which is thus not a guilty thing but a victim of accident. We do not think it ought. Surely a railroad car, or a vessel, could not be forfeited because unknown to the

owner some one else, without any export purpose, had left something in it that would be contraband if carried out of the United States. We do not see why an automobile should necessarily be forfeited under similar circumstances. Of course the jury could in this case, under all the evidence, have found that Riviera was in the act of purposely delivering these new tires to a customer in Mexico, and had himself put them into the car; but that was for the jury, and not the judge, to decide.

■ 2. Gonzales, a Mexican, had a jury trial, but not a fair one. We would not quibble about the wording of the question put to the jury, though it is not accurate in the use of the word "intending" instead of the statutory words "about to" carry the tires out of the United States. Intention may extend for months or years into the future, and the words of the statute authorize seizure only when the exportation is presently imminent. Gonzales admitted owning these tires at Riviera's filling station a mile from the international bridge, and that he bought them to resell at his own filling station and intended to bring them into Mexico, but not illegally, intending to obtain a proper permit. The real issue thus was only whether he intended to bring them into Mexico unlawfully as alleged, or only after obtaining a permit. No one at the time of seizure was moving or attempting to move these tires.

The question put to the jury presented this issue correctly enough; but in the argument to the jury, Government's counsel, probably within the limits of fair argument, said to the jury that the assumption of Gonzales was thin, that he could get the United States Government to give him, a Mexican alien, a permit, and that the Government would permit people from anywhere else to make application and obtain an export license. The more positive statement was then made: "Export licenses of course are for our own people and not for the people in that country," meaning Mexico. Counsel for Gonzales then said, "That is a matter of. law and I object to the statement that export control licenses are only for people of our country and that an alien could not get one." Gov-

ernment counsel then said, "If the court please, if I am in error, I will ask the Court to exclude it." The court said: "Overruled." We think this was necessarily understood by the jury as a ruling by the court that an alien Mexican could not legally get a license. There was nothing said in the court's charge to the jury to correct this. While the regulations are complex, it is now admitted by the Government in argument before us that an alien could get a permit on a special showing of hardship. So the jury had the case on the sole issue as to whether Gonzales was intending to get a license, but with the judge holding erroneously that Gonzales could not get one, or at least approving the statement of Government's counsel to that effect. We think this error was calculated to have a great influence on the verdict.

The judgment ought to be set aside and a new trial had. Reversed and remanded for further proceedings not inconsistent with this opinion.