**ZARRANZ et al. v. UNITED STATES.**

No. 13099.

United States Court of Appeals,
Fifth Circuit.

May 29, 1950.

Rehearing Denied July 11, 1950.

T. Gilbert Sharpe, Brownsville, Texas, for appellant.

William R. Eckhardt, III Assistant U. S. Attorney, Houston, Tex., Brian S. Odem, U. S. Attorney, Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and McCORD and WALLER, Circuit Judges.

HUTCHESON, Chief Judge.

Brought under the export control laws, Title 22 U.S.C.A. § 401 et seq., the libel of information was for the forfeiture of an automobile which had been properly seized and was being held under warrant in ac-

cordance with the precise terms of the statute.[1]

Denying the allegation that the persons named were exporting and intending to export, and attempting to ship the automobile through the port of Brownsville without complying with the provisions of the Act of July 2, 1940, 50 U.S.C.A.Appendix, § 701, the claimants, Zarranz and Abasolo, prayed that the libel be dismissed and the automobile be returned to them.

Tried to a jury, claimants' motion for directed verdict was overruled, and there was a verdict and judgment of forfeiture.

Assigning as error that the evidence was insufficient to establish that the car was about to be unlawfully exported, that a verdict for claimants was, therefore, demanded, and that it was error to deny their motion for a direction, claimants have appealed.

Admitting that there had been an intention, and at one time a plan, to export the automobile unlawfully, appellants urge upon us that the undisputed evidence shows: that this intention, and particularly this plan, was abandoned; and that at the time of the actual seizure, while there remained a general intention, there was neither present imminent intention nor present effective plan for imminent exportation.

Basing their argument on the last sentence of Sec. 401,[2] they insist that it could not be said that it was made to "appear that (the automobile) was about to be unlawfully exported, shipped from, or taken out of the United States".

The United States, on its part, agrees that the carefully devised plan for getting the car over by bribery had been interrupted. It agrees, too, that the undisputed facts show that upon advice from Garcia, the confederate in the Customs Office, that things were too hot at Brownsville at that time, and instructions from him to return with the car to Laredo and remain there until a propitious time for crossing, when Garcia would call, one Alarcon, who was to drive the car across, did take the car back to Laredo to wait for the call as advised.

It points out, though, that, on the third day after returning there, claimants decided that it would be better to return to Brownsville to be in a position to take prompt advantage of the first opportunity for crossing, and they did return. There under instructions not to be seen with the car, they parked it several blocks away from their hotel, and upon their way to make inquiries about their further movements in connection with the crossing, they were arrested. The car was detained, and Garcia and a confederate were arrested, convicted, and sentenced on charges of conspiring with an American Customs Officer to export two automobiles at, or about, that time.

It is appellants' contention that the words "about to be", as used in the statute, contemplate not merely a present active intention to export illegally, but also the present existence of an effective plan for carrying that intention out. Admitting that the intention to illegally export had not been abandoned, and that the claimants were standing ready to go on with the plan

1. This provided:
"Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war, or other articles, in violation of law, or whenever there shall be known or probable cause to believe that any such arms or munitions of war, or other articles, are being or are intended to be exported, or shipped from, or taken out of the United States, in violation of law, the several collectors * * * may seize and detain any articles or munitions of war about to be exported or shipped from, or taken out of the United States, in violation of law, and the vessels or vehicles containing the same, and retain possession thereof until released or disposed of as directed in Sections 402–408 of this title. * * *" 22 U.S.C.A. § 401.

2. "If upon due inquiry as provided in such sections the property seized shall appear to have been about to be so unlawfully exported, shipped from, or taken out of the United States, the same shall be forfeited to the United States."

as soon as advised that it would work, appellants urge upon us that until the obstacle to the effective working had been removed and the plan was in course of being carried out the car could not be regarded as "about to be exported", because the American Customs Officer, with whose collusion Garcia was to get the car across, had refused to let it be taken over on his shift. They insist, in short, that all of the preparation made by bringing the car to Brownsville, taking it back to Laredo, and bringing it to Brownsville again so that it could be carried over, and its hiding out, so that it could not be identified with them and picked up, must be completely disregarded, and it must be found, as matter of law, that the car, when picked up, was not, within the meaning of the statute, "about to be exported".

This is the second export control case [3] in which this court finds itself divided upon the sufficiency of the evidence, as matter of law, to support the finding and judgment. In the first case, U. S. v. Moreno, 5 Cir., 1950, 182 F.2d 258, the finding and judgment were against forfeiture, and the division, with the writer in dissent, was over whether the evidence did not, as matter of law, demand a finding and judgment in favor of forfeiture. In this case, the finding and judgment was in favor of the forfeiture, and the division is over whether the evidence did not, as matter of law, demand a finding and judgment against forfeiture.

In the Moreno case, the writer was of the opinion that the majority held and gave expression to the view that an intention, no matter how positive, definite, or continuing, would not subject the car to forfeiture under the act unless it was in process of being, or about to be, carried out under some effective plan under which the exportation was imminent. Holding an opinion quite the contrary of that he understood the majority to entertain, in his dissent in the Moreno case the writer gave expression to these views: that, as matter of law the tires there became subject to seizure

and forfeiture from and after the time when a firm intention to export illegally at the first opportunity, matured, and there were overt acts manifesting this intention; that it remained so subject as long as that intention remained active and was persisted in; and that the fact that there had been a temporary frustration of the plan, a temporary check in carrying the intention out, was immaterial.

The undisputed evidence here showing, as to the car, that neither the intention nor the plan to export it had been abandoned, the writer is in no doubt that the judgment was right and must be affirmed.

In addition, he is in agreement with the views of Judge McCord, expressed in his concurring opinion, that the evidence in this case furnishes full support for the verdict of the jury that the car was about to be exported and the judgment of forfeiture must stand, and that the Moreno case is readily distinguishable from this case on its facts, and is in nowise controlling here. For, whatever may be said as to the effect of the facts in Moreno's case, the record in this one conclusively establishes that neither the intention to export the car, nor the plan by which it would be carried out had been abandoned, but on the contrary, both were actually continuing. Moreover, those concerned in the unlawful exporting of the car were not only ready, willing, and anxious to get on with it, but were actively maneuvering for position to take immediate advantage of the first opportunity.

The judgment appealed from is

Affirmed.

McCORD, Circuit Judge (specially concurring).

I adhere in this case to the true rule which should govern these forfeiture cases, as already laid down by this court in the case of One Plymouth Automobile v. United States, 5 Cir., 165 F.2d 186, 188. I do not agree with the interpretation placed upon our views in the Moreno case,[1] as set forth in the majority opinion.

---

3. Title 22 U.S.C.A. § 401 et seq.

1. United States v. Moreno, 5 Cir., 1950, 182 F.2d 258.

I am of opinion that the Moreno case is readily distinguishable from this case under its own facts, and that it is in no wise controlling here. In that case, although forfeiture of the automobile together with the tire mounted thereon was held to be justified, I felt that the Government had no right under the statute to go out and seize the remaining tires and tubes stored at Claimant's home some distance from the border, for the reason that the unlawful exportation of those articles was not *presently imminent* at the time of seizure. One Plymouth Automobile v. United States, 5 Cir., 165 F.2d 186, 188. However, since the evidence here leaves me in no doubt that this car was about to be unlawfully exported, and that its unlawful exportation was presently imminent at the time of seizure, I concur in the judgment of affirmance.

WALLER, Circuit Judge (dissenting).

The owner wanted to get his car into Mexico by any means—legal or illegal. He had paid a bribe to that end, but the bribe-taker, failing to succeed, had, with unexpected, but commendable, honesty, refunded the bribe money with the statement that the situation was "too hot in Brownsville." Moreover, when the owner of the automobile returned from Laredo to Brownsville, he still had a very ductile purpose to get the car across the border by means fair or foul.

The statute, it seems: (a) did not authorize the forfeiture of the automobile unless "the property seized shall appear to have been about to be so unlawfully exported, shipped from, or taken out of the United States"; (b) made proof that the automobile was *about to be unlawfully exported* a condition precedent to forfeiture under Section 2; (c) must be strictly construed in this type of case.

At the time of the seizure it was still possible for the owner: (a) to obtain law-ful permission to export his car; (b) to sell it on this side of the border; (c) to abandon all plans or purposes to take it across illegally. We remember that the thief on Golgotha had a moral metamorphosis at the last moment. The verse that "While the lamp holds out to burn, The vilest sinner may return", contains an assurance upon which hosts of the belatedly regenerate have pillowed their hope and gone forth into the shadows serene and unafraid. I urge the application of this precept juridically as well as theologically.

A mere intent to export illegally, plus overt acts which are not exportatively transportative,[1] without more, do not meet the test of the statute that the property seized "shall appear to have been about to be unlawfully exported". In addition to an intent to export unlawfully, there must be an overt act attempting to make use of *a means of exportation* that the intended exporter had reason to believe was then and there available and that likely *would be effective* in accomplishing his purpose.

Measured by this test, there was an intent, there were overt acts, but at the time of the seizure of the automobile it was not shown there was an available means of illegal exportation then believed by the car owner to be effective and which he was then using or attempting to use.

In the case of Reynal v. United States, 5 Cir., 153 F.2d 929, 932, wherein two members of the present panel participated, it was held that allegations in the libel which merely alleged that the customs patrol inspectors who seized the property had probable cause to believe that it was about to be exported in violation of law were "sufficient to justify the warrant of detention which was issued in this cause. It is not sufficient to justify the forfeiture." It seems to me in the present case that the actions of the car owner were sufficient to constitute probable cause for

---

1. In Empresa Siderurgica, S. A., et al. v. County of Merced, et al., 337 U.S. 154, 69 S.Ct. 995, 93 L.Ed. 1276, the headnote (which is borne out by the text) states:

"(a) The process of exportation begins upon entrance of the articles into the export stream.

"(b) It is not enough that on the tax date there was a purpose and plan to export the property; * * *."

654

a·detention of the car but not sufficient to justify a forfeiture on the ground that it was about to be exported when all that was presented to the Court were vain, futile, and prior efforts.

In order for the Government to make out its case it was necessary for it to pyramid a number of presumptions, among which were: (1) that the car owner would not change his purpose; (2) that such owner would find a corrupt customs official whom he could bribe; (3) that such corrupt customs official would undertake to go through with the deal; (4) that the car owner would not apply for a lawful permit to take the car across; and (5) that, even if he did apply for such permission, it would not have been granted.

I do not believe that the strict construction of the statute which the law requires will permit the forfeiture of this automobile under the proof adduced in this case.