Sam **RUBIN**, Claimant,

v.

**UNITED STATES of America.**

No. 18433.

United States Court of Appeals
Fifth Circuit.

March 27, 1961.

**196**

Max Lurie, Miami, Fla., for appellant.

Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and RIVES and JONES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment under 22 U.S.C.A. § 401, as amended August 13, 1953, 67 Stat. 577,[1] forfeiting and condemning to the United States two Douglas B-26 airplanes.

The libel alleged that the two airplanes, of which Sam Rubin claimed to be the owner, were seized by agents of the Bureau of Customs, Treasury Department; that these planes were munitions and implements of war, as defined in regulations promulgated by the Secretary of State; that at the times and places of the seizures the agents who seized the planes had probable cause to believe that said airplanes were intended to be exported and removed from the United States in violation of Title 22 C.F.R., Section 123.1[2] in that application for license to export said planes had not been made to the Department of State; and, finally, that, by virtue of the provisions of 22 U.S.C.A. § 401, footnote 1, supra, the said airplanes had become forfeited to the United States.

1.  "An Act
"To further amend the Act of June 15, 1917, as amended.
"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 1 of title VI of the Act of June 15, 1917 (40 Stat. 233), as amended (U.S.C., 1946 edition, title 22, sec. 401), is further amended to read as follows:
" '(a) Whenever an attempt is made to export or ship from or take out of the United States any arms or munitions of war or other articles in violation of law, or whenever it is known or there shall be probable cause to believe that any arms or munitions of war or other articles are intended to be or are being or have been exported or removed from the United States in violation of law, the Secretary of the Treasury, or any person duly authorized for the purpose by the President, may seize and detain such arms or munitions of war or other articles and may seize and detain any vessel, vehicle, or aircraft containing the same or which has been or is being used in exporting or attempting to export such arms or munitions of war or other articles. All arms or munitions of war and other articles, vessels, vehicles, and aircraft seized pursuant to this subsection shall be forfeited.
" '(b) All provisions of law relating to seizure, summary and judicial forfeiture and condemnation for violation of the customs laws, the disposition of the property forfeited or condemned or the proceeds from the sale thereof; the remission or mitigation of such forfeitures; and the compromise of claims and the award of compensation to informers in respect of such forfeitures shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under the provisions of this section, insofar as applicable and not inconsistent with the provisions hereof. Awards of compensation to informers under this section may be paid only out of funds specifically appropriated therefor.
" '(c) Arms and munitions of war forfeited under subsection (b) of this section shall be delivered to the Secretary of Defense for such use or disposition as he may deem in the public interest, or, in the event that the Secretary of Defense refuses to accept such arms and munitions of war, they shall be sold or otherwise disposed of as prescribed under existing law in the case of forfeitures for violation of the custom laws.'
"Sec. 2. Sections 2, 3, 5, and 7 of the Act of June 15, 1917 (ch. 30, title VI, 40 Stat. 224-225; U.S.C., 1946 edition, title 22, Secs. 402, 403, 405, 407), and section 4 of such Act, as amended by the Act of March 1, 1929 (ch. 420, 45 Stat. 1423; U.S.C., 1946 edition, title 22, sec. 404), are repealed.
"Approved August 13, 1953."

2.  Title 22 C.F.R., 123.1, Application for License.
"(a) Persons who intend to export from or import into the United States, its territories or possessions, any of the articles enumerated in the U.S. Munitions List shall make application for license to the Department of State on the forms prescribed by it unless an exemption from these requirements is authorized by this subchapter. No such exports or imports shall be made until the application has been approved and the license issued."

The libel alleged only "probable cause to believe" that the airplanes were intended to be exported and removed from the United States in violation of law. The claimant, Sam Rubin, however, raised no point on the failure of the libel to allege more than "probable cause to believe," and, instead, filed an answer admitting all of the allegations of the libel except Articles: (6) that the planes were munitions and implements of war; (7) that the agents had probable cause to believe that the airplanes were intended to be exported and removed from the United States in violation of law; and (8) the conclusion that the airplanes became forfeited to the United States. At the beginning of the trial, the issues were further narrowed, and the truth of Article 6 was admitted:

"The Court:

"Have you worked it up now to the point where you can say without qualification? Can you say unqualifiedly that you stipulate to the truth of Article 6 of the libellant?

"Mr. Lurie:

"I can't fight that regulation. I'll tell you that right now.

"The Court:

"That is not quite far enough. Do you want any proof on the subject?

"Mr. Lurie:

"No.

"The Court:

"Do you stipulate to the allegation for the purpose of this hearing?

"Mr. Lurie:

"I will stipulate for the purpose of this hearing that the only thing that is at issue is whether or not these were being exported in violation of the regulations, as charged in Paragraph 7 of the libel.

"The Court:

"All right. Article 6 of the libel is admitted for the purpose of this proceeding. So that leaves in issue the allegation of facts in Article 7, namely, that at the times and places aforesaid, the agents of the libellant have seized the airplanes as aforesaid; that said airplanes were intended to be exported or removed from the United States in violation of regulations duly issued by the Secretary of State pursuant to Section 414 of the Mutual Security Acts of 1954 [22 U.S.C.A. § 1934] and Executive Order 10575 [22 U.S.C.A. § 1781 note], in that an application for license to export said planes had not been made to the Department of State (Title 22 CFR, Section 121.1).

"It is disputed that there was no license to be obtained, or it is contended that there was no occasion to get a license?

"Mr. Lurie:

"My contention was there was no occasion at that time to get a license.

"The Court:

"Because of no intention to export?

"Mr. Lurie:

"That's right."

Finally, just before the first witness was introduced, the issues were still further narrowed:

"The Court:

"Before the testimony begins, I assume from what has been said that the issue is even narrower than I stated it.

"The question is whether there is probable cause to believe that these two things were intended to be exported or removed from the country. Isn't that it?

"Mr. Lurie:

"That's right.

"The Court:

"Because if they were being removed, would it be in violation of the law?

"Mr. Lurie:

"Yes, because there was no exportation license as required by the Secretary of State.

"The Court:

"So we have that narrow issue.

"Mr. Bates:

"Yes, sir.

"Mr. Lurie:

"That's right.

"The Court:

"Was there probable cause to believe at the time of the seizure that there was an intention to—an existing intention—to remove those planes from this country?

"Mr. Bates:

"Yes, sir.

"The Court:

"Is that agreed, Mr. Lurie?

"Mr. Lurie:

"Yes, sir."

At the conclusion of the evidence, and after hearing some argument from the claimant's counsel, the district court concluded:

"I find that there was probable cause to believe the two planes at the time of the seizures were intended to be exported or removed from the United States in violation of the law; that the officer seizing the planes had such probable cause to believe and did believe in good faith that the planes were intended at the time of the seizures to be exported or removed from the United States in violation of law.

"Accordingly, I find and order judgment in favor of the Libellant for the forfeiture of the planes pursuant to Section 401 of Title 22, United States Code.

"The United States Attorney will prepare the necessary findings of fact and conclusions of law, and order."

Thereafter, findings of fact and conclusions of law were made, again, however, finding "probable cause to believe" that the airplanes were intended to be exported and removed from the United States in violation of law, and not expressly finding the existence of such unlawful intent. Upon such findings and conclusions, the final judgment of forfeiture was entered.

Upon appeal, no serious attack is made upon the finding of "probable cause to believe." After a careful reading of the entire record, we adopt upon that issue the excellent summary contained in the Government's brief:

"As to the narrow issue the testimony, and particularly the testimony of Customs Agent Shanley who effected seizure of the planes, clearly establishes an existing intention to remove the planes from this country. Various facts emerge from the testimony. The planes were flyable. Overseas maps were obtained. The planes were fueled. The planes were designed as bomber-type. The people associated in the purchase and preparation of the planes for flight had a reputation for neutrality violations. One of said people, Eduardo Whitehouse, an official in the Cuban Government under former dictator Batista, told Shanley of his strong desire to do whatever he could to overthrow Castro. Two of said people, Spinning and Merola, had been charged with smuggling Batista's brother-in-law into this country. The claimant Sam Rubin had attempted a neutrality violation in association with political exiles who had been connected with the Batista regime. Spinning's statements to Shanley pointed to foreign flight. In short, it is respectfully submitted that by proof of overt acts performed in relation to the subject planes and by proof of the disposition and reputation of those, including the claimant, who performed those acts, the Government has more than sustained its burden."

The appellant makes three contentions: First, that the Government failed to prove that the appellant either did or did not apply for a license to export the two planes in question. The short answer is, as has heretofore been shown, that that much was expressly admitted by the claimant's counsel.

The second contention is thus stated in appellant's brief:

"If the Court's interpretation of Title 22, 401, Title 22, 404, and the regulations issued pursuant to Section 414 of the Mutual Security Act of 1954, viz., that the Appellee merely had to prove that it, the Appellee, had probable cause to believe that the Appellant intended to export munitions of war in violation of law, then said statute is unconstitutional, in that it deprives the Appellant of his property without due process of law, in contravention of the Fifth and Fourteenth Amendments of the Constitution of the United States."

For the sake of accuracy, it may be observed that one of the sections referred to by appellant, 22 U.S.C.A. § 404, was repealed by the Amendment of August 13, 1953. See the final clause of that Amendment, footnote 1, supra.

■ No question of constitutionality of 22 U.S.C.A. § 401 was raised in the district court. Not only did claimant fail to question the sufficiency of the libel, which alleged only "probable cause to believe," but he stipulated upon the narrow issue: "Was there probable cause to believe at the time of the seizure that there was an intention to—an existing intention—to remove those planes from this country?" The appellant is not, therefore, in position now to question the constitutionality of 22 U.S.C.A. § 401.

■ Even if that issue were properly presented, we would have to find against the appellant. In the first place, there was practically no evidence to rebut the presumption raised by the finding of "probable cause to believe" that the airplanes were intended to be exported and removed from the United States in violation of law. That being true, and under the admissions and stipulations of the claimant, a finding of the actual existence of such unlawful intent may fairly be implied.

■ Further, 22 U.S.C.A. § 401, as amended, footnote 1, supra, cannot properly be construed to authorize forfeiture in the absence of an actual intent to export the munitions of war in violation of law. True, the amended section omitted the final sentence of Section 401 as it had read: "If upon due inquiry as provided in such sections the property seized shall appear to have been about to be so unlawfully exported, shipped from, or taken out of the United States, the same shall be forfeited to the United States."

That sentence had been construed by this Court to mean: "Intention may extend for months or years into the future, and the words of the statute authorize seizure only when the exportation is presently imminent." One Plymouth Automobile v. United States, 5 Cir., 1947, 165 F.2d 186, 188. See also, United States v. Moreno, 5 Cir., 1950, 182 F.2d 258, 259; United States v. One North American Airplane, 3 Cir., 1952, 197 F.2d 635, 639, 640. The final sentence of the preceding Section 401 was omitted to accomplish the purpose expressed in House Report 1073, July 31, 1953: "The bill would also simplify and bring up to date the procedure for effecting forfeiture and disposition of property being or intended to be exported in violation of law, and for effecting forfeiture and disposition of the transporting vessel, vehicle, or aircraft." 2 U.S.Code Cong. and Adm.News, p. 2386.

That there was no intent to authorize forfeiture in the absence of an actual intent to export the munitions of war in violation of law is further shown by the adoption in subsection (b) of amended Section 401, footnote 1, supra, of certain provisions of the customs laws, which include 19 U.S.C.A. § 1602 et seq., and by the additional legislative history explaining the purpose of the amendment:

"In view of the ever-increasing duties of customs officials and the importance of export controls and restrictions to the welfare of the Nation and to the national security, it is important that the provisions relating to enforcement of the exportation laws be modernized and strengthened. This objective is accomplished by the reported bill in the following respects:

"(1) The bill would amend the Espionage Act to provide not only for seizure and forfeiture of articles or merchandise which are being or are intended to be illegally exported, and the vehicle, vessel, or aircraft in which exportation is intended to be accomplished, but also for the seizure and forfeiture of articles or merchandise actually illegally exported and the carrier used to effectuate the exportation.

"(2) The bill would amend present seizure and condemnation procedure of the Espionage Act to conform to seizure and condemnation procedure provided under the custom laws of the United States, by eliminating the necessity of obtaining a warrant of detention, permitting seizures valued at $1,000 or less to be forfeited administratively, and permitting the Secretary of the Treasury to remit any forfeiture where he finds that it was incurred without willful negligence or without intention to violate the law, or where mitigating circumstances exist."

2 U.S.Code Cong. and Adm.News, p. 2387.

The section permitting seizures to be forfeited administratively was amended on September 1, 1954, so as to substitute a value not exceeding $2,500.00 for $1,-000.00. See 19 U.S.C.A. § 1607, and its "Historical Note."

The customs laws for more than a century had placed the burden of proof upon the claimant, provided that probable cause for seizure be first shown by the libellant. "By the 71st section of the Duty-Collection Act of 1799, chap. 128, the *onus probandi* to establish the innocence of the property is thrown upon the claimant in all cases where probable cause is shown for the seizure and prosecution." Taylor et al. v. United States, 1845, 3 How. 197, 205, 44 U.S. 197, 205, 11 L.Ed. 559. "This court had ruled in Taylor v. The United States, 3 How. [197] 211 [11 L.Ed. 559], that the judge, and not the jury, was to determine whether there was probable cause, so as to throw on the claimant, the *onus probandi* to establish the fairness of the importation." Buckley v. United States, 1846, 4 How. 251, 45 U.S. 251, 259, 11 L.Ed. 961.

██ That rule was carried forward by 19 U.S.C.A. § 1615, adopted by subsection (b) of amended Section 401, Title 22, footnote 1, supra. When 22 U.S.C.A. § 401 is properly construed, it does not present the constitutional problems asserted in the appellant's second specification of error.

As its third and final specification of error, appellant asserts:

"The Appellant was deprived of his property without due process of law in contravention of the Fifth and Fourteenth Amendments of the Constitution of the United States, in that he was not afforded procedural due process in the conduct of the case."

Appellant complains that the district court evinced bias in favor of the appellee's cause. A careful reading of the record convinces us otherwise. Appellant further complains that the district court violated due process by admitting hearsay evidence on reputation and probable cause. That insistence is not so substantial as to justify the lengthening of an opinion already too long. We find no reversible error in the record, and the judgment is

Affirmed.