**UNITED STATES of America,**
Libellant,

v.

**34 PIPER PAWNEE AIRCRAFT and 337 Crates, Boxes and Cartons of Miscellaneous Aircraft Parts and Equipment, Respondent,**

**Impala Trading Corporation, Intervenor-Claimant.**

Civ. No. 484.

United States District Court
M. D. Florida,
Ocala Division.

June 13, 1963.

Edward F. Boardman, U. S. Atty., Jacksonville, Fla., for libellant.

Ross, Reinhardt, Preddy & Haddad, Miami, Fla., for respondent.

DE VANE, District Judge.

This case illustrates how far trial Judges will sometimes go to make sure that a right decision is finally reached.

This case began on March 20, 1962, with the seizure by Treasury Agents at Reddick, Florida, of 34 Piper Pawnee Aircraft and 337 crates, boxes and cartons of miscellaneous aircraft parts and equipment herein sought to be judicially confiscated by libellant. On August 29, 1962, the United States filed its libel *in rem* to forfeit the property and thereafter Impala Trading Corporation filed its intervention petition in the case asserting that it is the lawful owner of the libeled goods.

A motion was filed by the Government to dismiss the petition of intervenor-claimant, Impala Trading Corporation, and a motion was filed by intervenor-claimant for a judgment in its favor on the pleadings. These motions resulted

in pre-trial hearings covering 342 pages of transcript, at the conclusion of which Judge Simpson denied both motions and held:

"1. The initial issue is that of ownership; that is to say that if claimant is not the true and proper owner of the libeled property, it has no standing herein and its claim should be dismissed. On this issue claimant has the burden of proof.

"2. Thereafter, the libellant may rebut claimant's evidence of ownership. Libellant then will be required to present its proof upon the issue of probable cause for the seizure.

"3. Following libellant's evidence as to probable cause, claimant may rebut that evidence and then proceed with its evidence as to the innocence of the libeled property, the ultimate issue in the case. The burden of proof in (on) this issue is on the claimant."

It fell my lot to try the case on these issues.

The testimony taken in the two day trial of the case covered 410 pages. At the conclusion of the hearing on Number 1 above, the Court held, for reasons hereafter stated, that the evidence established beyond doubt that claimant was not the owner of the property but that the property was owned by the Castro government of Cuba. This left for this Court's consideration only the issues presented by the last sentence of Number 2 and by Number 3 above and the case proceeded for trial of these issues.

This case grew out of a contract dated December 22, 1960, entered into by the intervenor and a Cuban government bank, designated in the record in this case as El Banco Para El Commercio Exterior De Cuba, commonly known and herein referred to as Bancec, under which intervenor agreed to buy for the Cuban government forty new Piper Pawnee airplanes. The contract was negotiated on behalf of intervenor by David Bruce Bullock, a resident of Calgary, Canada, acting as agent for and on behalf of Rudolfo Pretto, doing business under the name of Impala Trading Corporation.

The contract called for the delivery of the forty new Piper Pawnee airplanes for the sum of $783,000.00. The contract price covered the price of the airplanes plus the estimated costs of their delivery to Cuba. The airplanes could not be safely flown to Cuba, so they were to be crated and shipped there.

Under the contract the purchase price was to be deposited in the Royal Bank of Canada in the name of Impala Trading Corporation. This provision of the contract was promptly fulfilled by Bancec by depositing two letters of credit, one on January 9th and the other on February 1, 1961, in favor of Impala Trading Corporation in the amount stated above. After this money had been deposited to its account in Canada, Impala Trading Corporation made arrangements for and had the money transferred from the Royal Bank of Canada to the Barclay Bank of Nassau, British West Indies. This transfer was made on May 1, 1961.

As soon as the money was transferred from the Royal Bank of Canada to the Barclay Bank of Nassau, Rudolfo Pretto, David Bruce Bullock, Irving M. Wolff, Pretto's agents, Ernesto Capo, agent for Bancec, and others interested in this transaction met at the Barclay Bank to consider how best to proceed further in this matter. They were confronted with the facts that on October 20, 1960, the Government had placed an embargo against the shipment of any goods of any kind to Cuba except certain food stuff and medical supplies and that our Government had on January 3, 1961, terminated diplomatic relations with the government of Cuba. This presented to them the question as to whether or not they should attempt to go forward with the performance of the contract between Impala Trading Corporation and Bancec. It was concluded at this conference to proceed with the fulfillment of the contract and to ship the airplanes to Cuba via Paraguay, from which country the

airplanes could be safely exported to Cuba. To carry this plan into effect, Pretto authorized the transfer of $475,000.00 to the credit of Irving M. Wolff in a Miami, Florida, bank to be used by Wolff for the purchase of the airplanes, and Wolff was authorized to make arrangements with Phillip D. Reams as the purchasing agent for the airplanes.

Because of the diplomatic situation that existed between our Government and Cuba, the airplanes could not be purchased from the manufacturers or dealers in fulfillment of the contract, and, therefore, Reams was directed to purchase second hand airplanes wherever they could be acquired and to assemble them at Reddick, Florida, where they would be dismantled and crated for shipment to Cuba via Paraguay.

A substantial part of the remainder on deposit with the Barclay Bank was divided between Rudolfo Pretto, David Bruce Bullock, Ernesto Capo, and Irving M. Wolff, which was paid to them as commissions for their services and for expenses in the securing of the contract with Bancec and in perfecting the arrangements for the transfer of the money from Cuba to the Barclay Bank via the Royal Bank of Canada.

Phillip D. Reams promptly put into effect a program to acquire the forty airplanes from various areas of the United States which used this type of airplane for crop dusting purposes. By the time he had acquired and brought to Reddick, Florida, thirty-four of these planes, a Government agent discovered what was going on there and in due course Government Customs officials issued an order impounding all thirty-four planes and parts and equipment associated with them. This, of course, brought to a standstill the acquisition of any further planes.

█ In the opinion of this Court the relations existing between this Government and the Castro government made this property subject to confiscation by the Government on the date of its discovery in the possession of Impala Trading Corporation. Title 22 U.S.C.A. § 401 et seq.; Title 50 U.S.C.A.App., Sections 2021–2032 (the Export Control Act); Rubin v. United States of America (5th Cir.), 289 F.2d 195. This view of the matter makes it unnecessary for this Court to go further with the analysis of the evidence in the case.

█ Intervenor asserts the right to retain possession of the property, because it was the agency that acquired it for the Cuban government, and he asserts the right to hold it until such time as there is a Cuban government acceptable to the United States to whom this property would be delivered. The record clearly demonstrates that Impala Trading Corporation and Rudolfo Pretto would be very unsafe custodians for the safekeeping of this property. A cursory examination of the perjured testimony given by Pretto in the case is conclusive proof that he is an unfit person to hold the property for any purpose. And, further, the Castro government could cancel its agency contract with intervenor and send another agent to the United States to take over the property and attempt to move it to Canada or some other country that would permit its shipment to Cuba.

The Court finds and holds that the Government had the authority under the law to seize this property and has the authority to confiscate it. An appropriate decree will be entered herein judicially confirming and approving the seizure and forfeiture of said property to the Government.