STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. SAMUEL SOLOMON, PLAINTIFF IN ERROR.

Argued November 23, 1921—Decided April 28, 1922.

1. The legislature, in enacting the ninety-eighth section of the Crimes act (*Comp. Stat., p.* 1777), which makes it a crime to manufacture "any rum, brandy, wine or spirits of any kind, or any other liquid of which distilled spirits of any kind shall form a part to be used as a beverage that shall be adulterated or manufactured with spurious or poisonous ingredients" only denounced the manufacturer of such adulterated spirits when they are intended to be used for beverage purposes.

2. It is of the very essence of the crime denounced in the ninety-eighth section of the Crimes act that the adulterated article should be intended to be used as a beverage and an indictment that charges the keeping for barter or sale of whiskey adulterated with a poisonous ingredient without charging that the same was to be used as a beverage sets out no crime under the statute.

3. Every fact or circumstance which is a necessary ingredient in an offence must be set forth in the indictment, otherwise it is defective.

On appeal from the Supreme Court, whose opinion is reported in 96 *N. J. L.* 124.

For the plaintiff in error, *Edward Schoen.*

For the defendant in error, *J. Henry Harrison* and *Wilbur Mott.*

The opinion of the court was delivered by

KALISCH, J. The record before us shows that the plaintiff in error was convicted in the Essex County Quarter Sessions on an indictment charging him with a violation of section 98 of the Crimes act; that judgment was given on such conviction, and thereupon the plaintiff in error, by writ of error issued out of the Supreme Court, brought the record of the proceedings, conviction and judgment for review to that tribunal, where there was a judgment of affirmance.

The alleged errors of the trial court, chiefly relied on by counsel of plaintiff in error in the Supreme Court, and now here, for a reversal of the judgment relate to the construction put by the trial court on section 98 of the Crimes act, and in holding that the indictment charged the plaintiff in error with a crime under that statute. The statute in question reads: "Any person who shall manufacture, or import already manufactured, or barter or sell, or keep in his possession for barter or sale, any rum, brandy, wine or spirits of any kind, or any other liquid of which distilled spirits of any kind shall form a component part to be used as a beverage, that shall be adulterated or manufactured with spurious or poisonous ingredients of any description, shall be guilty of a misdemeanor."

The indictment contains two counts, the first of which charges that the defendant "unlawfully did keep in his possession for barter and sale, certain spirits, to wit, twenty gallons of whiskey which had been then and there adulterated with spurious and poisonous ingredients, to wit, wood alcohol, contrary to the form of the statute in such case made and provided," &c.; and the second that he (the defendant) "unlawfully did keep in his possession for barter and sale, certain spirits, to wit, twenty gallons of whiskey, which had been then and there manufactured with spurious and poisonous ingredients, to wit, wood alcohol, contrary to the statute," &c.

Before taking up for consideration the question raised as to the validity of the indictment, it is proper to point out here that the errors complained of and which crept into the case in the trial court, were obviously due to a misconception of the purport of the statute.

The case was tried upon the theory that the statute was enacted to protect the vendors of liniments, and the Supreme Court fell into this same error, for in the opinion the learned judge says: "There are liquids of which distilled spirits form a component part, such, for example, as liniments which are kept for barter or sale as such, and it was for the protection of vendors of such wares that the words 'to be used as a beverage' were inserted in this clause of the statute. It is

only when such liquids are kept for barter or sale to be used as a beverage that the vendors are brought within the statute. In adopting this construction of the statute, we think the trial judge ruled correctly." This reasoning is confuted by the plain language of the statute. The statute had its origin in 1871. *Pamph. L., p.* 105. It is entitled "An act making it a criminal offence to manufacture or sell, or import already manufactured for sale, any adulterated or spurious liquors in the State of New Jersey."

The law that the legislature clearly contemplated to enact, as evidenced by the title, was a law to punish the manufacture, sale or importation of spurious or adulterated liquor.

Section 1 of the statute *sub judice* is incorporated in its original form in the Revision of 1877, page 263, and in the General Statutes of 1896, page 1104. In the Revision of 1898, this section found its place as section 98 of the Crimes act, page 822, and is designated as such in 2 *Comp. Stat., p.* 1777. The language of the prohibitory clauses remained in its native dress. The only blemish observable is the absence of the comma after the word "part" the last word of the last antecedent clause and immediately before the preposition "to" of the continuing phrase "to be used as a beverage." The omission of the comma was evidently due to the oversight of printer or proofreader. But be that as it may, the presence or absence of the comma is wholly unimportant. A fair reading of the statute, in its general sense, makes it clear that the words "to be used as a beverage" refer to rum, brandy, wine, &c., as well as to any other liquid of which distilled spirits of any kind shall form a component part, to be used for beverage purposes. To adopt the construction put upon the statute by the court below would not only require us to countenance an obvious repugnancy to the plain language of the legislative enactment, but also to ignore the elementary canons of interpretation of statutes. In order to arrive at the legislative intent, recourse must be had to what the existent evil was which was sought to be corrected at the time the statute was enacted. We need not go outside of the express words of the statute for that purpose. They leave no

room for any doubt that it was the legislative intent to protect the community from imposition and the public health from injury, by declaring it to be a misdemeanor for any person to adulterate or deal in adulterated brandy, rum, wine, &c., to be used as a beverage, with spurious or poisonous ingredients. It must not be forgotten that at the time of the enactment of the statute, and up to the adoption of the eighteenth amendment of the constitution of the United States, the manufacture and sale of ardent spirits were recognized as a lawful business throughout the state, and brandy, rum, wine, &c., were not only drunk by a large part of the population of this state, but were also used for medicinal purposes and in the exercise of religious ceremonies, and, therefore, it is more consonant with sound sense to hold that it was for the protection of those who drunk of wine or liquor, against injury to health, rather than with the notion that it was for the protection of vendors of liniment, of which distilled spirits composed a component part, to be used as a beverage.

The record discloses that the case was tried and submitted to the jury, against objection of defendant's counsel, upon the erroneous notion above pointed out, and there can be no question that the action of the trial court in this respect was greatly prejudicial to defendant in maintaining his defence upon the merits of the case, and, hence, a reversal of the judgment is required.

We now turn our attention to a consideration of the objection made against the validity of the indictment.

As has already been stated the indictment contains two counts. Neither count alleges that the defendant kept such adulterated ardent spirits for barter and sale, to be used as a beverage. This omission is a fatal defect and vitiates the indictment. We have already sufficiently pointed out in discussing the purport of the statute that what the law-making power plainly intended to inhibit was the adulteration of liquids, of which distilled spirits shall form a component part, with poisonous or spurious ingredients, to be bartered or sold for beverage purposes in order to protect the public against imposition and injury to health. The statute only denounces

the keeping for barter or sale of such adulterated spirits as a crime when they are intended to be used for beverage purposes. Thus a person who kept for barter and sale a liniment of which distilled spirits formed a component part, and which contained a poisonous ingredient, such as laudanum or ether or chloroform, for external use only, would not come within the purview of the statute. It is only when the article is kept for barter or sale for beverage purposes that an offence is committed against the statute. That being so, it is quite obvious that the keeping the forbidden adulterated article for barter or sale, with the intent that it should be used as a beverage, is the very essence of the offence denounced by the statute. It follows, therefore, as a logical sequence, that unless the indictment charges that the keeping for barter or sale of the whiskey adulterated with a poisonous ingredient, "to be used as a beverage," it sets out no crime under the statute.

The Supreme Court took the view that where rum, brandy, wine or spirits of any kind is kept for barter or sale, that it will be presumed to be kept to be used for beverage purposes, and that it is only in the case where the liquid of which distilled spirits of any kind forms a component part that the indictment must allege that the liquid to be kept for barter or sale to be used as a beverage, and that since the defendant was charged with keeping adulterated whiskey only, for barter or sale, there is a presumption that he kept it for barter and sale to be used for beverage purposes.

The fallacy of this reasoning arises from a mistaken conception of the purport of the statute, which has been fully discussed above, in dealing with its proper construction and effect. In our view, the words "to be used as a beverage" are an essential element of the statutory crime denounced, and, according to the familiar rules governing pleading in criminal cases, every constituent element of the crimes must be set forth in the indictment and not left to intendment. To hold that a presumption arises that the defendant kept such adulterated whiskey for barter and sale to be used as a beverage from the fact that the indictment alleges that he kept such

adulterated liquor for barter and sale, is to virtually inject into the indictment an essential constituent element of the crime absolutely necessary to charge the statutory offence, and which essential fact, by reason of its absence from the allegation in the indictment, rebuts any presumption that the grand jury found that the defendant kept the liquor for barter and sale for beverage purposes. To attempt to cure the omission by resorting to a presumption is wholly without legal support and justification. To resort to presumptions to cure fatally defective indictments would tend to incalculable evil and oppression, and, in effect, sanction violations of constitutional guarantees, namely, of the right of the accused to be informed of the nature of the accusation against him, and that he shall be tried for the offence charged in the indictment by the grand jury.

The fragile theory that a presumption may be raised in aid of an indictment which omits a constituent element of the statutory crime, is shattered by the force of the familiar inflexible legal rules that no presumption of guilt arises from the mere finding of an indictment against an accused, and that there is a presumption of innocence which abides with an accused until his guilt is established by proof beyond a reasonable doubt.

Before concluding it may be well to advert here to an unbendable and substantial rule of pleading, essential to the validity of an indictment whether founded on the common law or statute, which rule though simple and familiar seems by reason of its universality often to escape attention. This rule is cogently stated by Bishop in 1 *Bish. Cr. Pro.* (2d ed.), § 81, as follows:

"This principle that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted, pervades the entire system of the adjudged law of criminal proceedings. It is not made apparent to our understandings by a single case only. Wherever we move in this department of our jurisprudence, we come in contact with it. We can no more escape from it than from the atmosphere which surrounds us."

The same learned author, in his valuable treatise on *Statutory Crimes,* § 166, says:

"In the work on Criminal Procedure we saw that the fundamental doctrine relating to the indictment, whether at common law or under a statute, the allegations must cover every particular element of crime entering into the punishment to be inflicted" * * *.

And in volume 1 on *Cr. Pro.,* § 521, to which above reference is made, the author says: "And that he knows certainly what each thing is, wherewith he is charged, all the facts which enter into his offence must, especially in felony, be set down by express averment, nothing be left to intendment." *Reg.* v. *Williams,* 14 *L. J.* (*N. S.*) 164; *Reg.* v. *Chatburn,* 1 *Moody* 403.

The legal rule is tersely and accurately expressed in *Mears* v. *Com.,* 2 *Grant* (*Pa.*) *Rep.* 385, 387, as follows: "The general rule of pleading is that every fact or circumstance which is a necessary ingredient in the offence must be set forth in the indictment, otherwise it is defective."

This doctrine is lucidly stated and discussed by Mr. Justice Garrison in *State* v. *Schmid,* 57 *N. J. L.* 626. From what has been said, it follows that no valid judgment could have been pronounced on the defendant, in the present case on the indictment in question, and for this additional reason the judgment must be reversed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, WILLIAMS, JJ. 3.

*For reversal*—SWAYZE, PARKER, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, GARDNER, VAN BUSKIRK, JJ. 9.