STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
JOSEPH DOTO, ALSO KNOWN AS JOE ADONIS, DE-
FENDANT-APPELLANT.

Argued October 11, 1954—Decided November 8, 1954.

*Mr. Abraham J. Slurzberg* argued the cause for the appellant (*Mr. John E. Selser*, attorney).

*Mr. Guy W. Calissi* argued the cause for the respondent (*Mr. David H. Harris*, Special Deputy Attorney-General of New Jersey, of counsel).

The opinion of the court was delivered by

BURLING, J. This is a criminal action. The offense laid to the defendant Joseph Doto, also known as Joe Adonis, was false swearing, a violation of *N. J. S.* 2A:131–4. The defendant appealed the judgment of conviction entered against him in the Superior Court, Law Division. The appeal was addressed to the Superior Court, Appellate Division, and prior to hearing there was certified on our own motion.

It was stipulated at the trial in the present case that the defendant Joseph Doto appeared before the Bergen County (New Jersey) grand jury, third stated session, September term 1951, on February 10, 1953, and was duly administered an oath by the foreman who was then duly authorized to administer that oath, and that the grand jury at that particular time was duly and lawfully · constituted. It was established in the present action, without contradiction, that Doto was asked the following question in the course of his interrogation in the grand jury proceedings aforesaid:

"Mr. Doto, just so we can have the record complete, when and where were you born?"

To this Doto replied:

"Passaic, New Jersey, November 5, 1901."

The State conceiving this testimony to be false, sought indictment of Doto. The same grand jury filed four indictments, two charging Doto with perjury and two charging him with false swearing. All four indictments were based upon the testimony hereinbefore quoted. One of the perjury indictments related to Doto's date of birth and the other to his place of birth. These were not moved for trial. Indictment No. 220, charging Doto with false swearing as to the date of his birth, and Indictment No. 221, charging him with false swearing as to the place of his birth, filed February 17, 1953, were moved for trial. It is the consolidated trial of these two false swearing indictments which is the source of

the present appeal. Doto waived a jury and a trial to the court ensued. At the close of the State's case Doto moved for judgment of acquittal on both indictments for failure of proof. *R. R.* 3:7–6. The motion was denied. Doto then rested his case without introducing any evidence and repeated his motions for judgment of acquittal on both indictments. *R. R.* 3:7–6, *supra*. The trial court denied the motions. The trial court subsequently heard closing arguments of counsel and took a short recess to deliberate. Thereafter the trial court found Doto not guilty of false swearing as to the date of his birth, but found him guilty of false swearing as to the place of his birth. Upon these findings verdicts were entered, guilty as charged on Indictment No. 221, and not guilty on Indictment No. 220. Sentence was imposed on February 2, 1954, on the conviction under Indictment No. 221, and Doto appealed.

The questions involved on this appeal include whether (a) an indictment is valid under *N. J. S.* 2A:131–4 (*i. e.*, for false swearing) where it fails to contain explicit negation of the truth of the statements on which the indictment is based; (b) the defendant's motions for judgment of acquittal on indictment No. 221 should have been granted; (c) the trial court erred in its rulings on the admissibility of evidence; (d) the defendant received a fair trial; and (e) the evidence supports the judgment of conviction.

## I

The first question involved is addressed to the sufficiency of the indictment. Doto contends that in Indictment No. 221 the alleged false statement is not adequately negatived by an averment of the true fact. If error in the format of the indictment exists as alleged by Doto, it is asserted for the first time on this appeal. The indictment sufficiently apprised him of the charge against him and was subject to amendment under *R. R.* 3:4–5, formerly *Rule* 2:4–13.

This is not a perjury action but is a prosecution for the statutory offense of false swearing under *N. J. S.* 2A:131–4

*et seq.* The alleged error in the indictment consists of the purported failure of the State to sufficiently negative the truth of the statements Doto was alleged to have made under oath. The pertinent portion of Indictment No. 221 reads as follows:

> "* * * and the said Joseph Doto, also known as Joe Adonis, being so sworn as aforesaid, did wilfully swear falsely in substance and effect that he was born in the City of Passaic, County of Passaic and State of New Jersey, which said statement the said Joseph Doto, also known as Joe Adonis, then and there well knew was false, contrary to the form of the statute in such case made and provided, against the peace of this State, the government and dignity of the same."

The theory of the defense in this case is that the crux of the issues is Doto's belief at the time he gave the alleged false testimony. In perjury cases, analogy to which for the purposes of this limited question concerning the sufficiency of the indictment seems permissible, the general rule seems to be that the indictment should expressly contradict the matter alleged to have been falsely sworn to by the defendant. 2 *Wharton's Criminal Law, Ruppenthal* (12th ed. 1932), sec. 1566, pp. 1825–1826. *Cf. Heintz v. Court of General Quarter Sessions of Peace of Union County,* 45 N. J. L. 523, 525 (*Sup. Ct.* 1883); 2 *Schlosser, Criminal Laws of New Jersey* (rev. ed. 1953), sec. 1938, p. 952. Compare, however, *State v. Voorhis,* 52 N. J. L. 351, 357 (*Sup. Ct.* 1890).

Where the accused "has sworn only to his belief, it will be proper to aver either that the defendant did not believe what he swore, or that 'he well knew' to the contrary." 2 *Wharton's Criminal Law, ante,* sec. 1568, p. 1826. It is said that in this respect indictments for perjury are sufficient if they state that the testimony of the defendant was false. 41 *Am. Jur., Perjury,* sec. 33, p. 20. *Cf. State of New Jersey v. Sullivan,* 25 N. J. Super. 484, 492 (*App. Div.* 1953), certification denied 13 N. J. 289 (1953), *certiorari* denied 347 U. S. 903, 74 S. Ct. 428, 98 L. Ed. —— (1954). Assuming for the purposes of this appeal that formal negation of the alleged false statement in the indictment by expression

of the truth of the fact is required in indictments for perjury in this State, and applies as well to an indictment for false swearing, the principles above adverted to indicate that the present indictment is, even so, sufficient.

■ Further, the indictment for false swearing is concerned with a statutory offense. The indictment in the present case was in the statutory language and explicitly apprised the defendant of the offense charged. It is in these respects adequate under the principles embodied in *State v. Harris,* 132 *N. J. L.* 54, 57 (*Sup. Ct.* 1944). *Cf. State v. Morris,* 98 *N. J. L.* 621, 623 (*Sup. Ct.* 1923), affirmed *per curiam* 99 *N. J. L.* 526 (*E. & A.* 1924). The essence of constitutional right in relation to the sufficiency of an indictment is that the accused be "informed by the indictment in certain, definite and understandable terms of the crime charged to him." *State v. Grothmann,* 13 *N. J.* 90, 97 (1953). We find that Indictment No. 221 meets this test. *Cf. State v. Kowalczyk,* 3 *N. J.* 51, 55–56, 60–61 (1949).

## II

The questions involved include the question whether the trial court should have granted the defendant's motions for judgment of acquittal on Indictment No. 221 made at the close of the State's case. *R. R.* 3:7–6, *supra.* We find that the trial court's denial of the motions was correct.

The theory advanced by the defendant is that even conceding that Doto was actually born in Italy, there is no proof that he knew that fact and his alleged honest belief that he was born in Passaic, New Jersey, is an adequate defense (even though he did not take the stand and testify to such alleged belief). Doto argues that from the very nature of the issue he could have no positive knowledge whether he was born in the United States, citing *Ark Foo v. United States,* 128 *F.* 697, 699 (*2nd Cir.* 1904).

■ One who believes he is testifying falsely or who does not know whether his testimony is true or false may be guilty of false swearing.

"A person may commit perjury either by swearing to a fact which he knows is not true, or by swearing to his knowledge or belief as to a fact when he has no such knowledge or belief." *Clark and Marshall, Crimes* (5th ed. 1952), sec. 446, p. 444.

In other words it may be perjurious for one to swear that a fact exists when he knows nothing about it or thinks or believes .the contrary of his testimony. *Clark's Criminal Law, Mikell* (3rd ed. 1915), pp. 444–445; 1 *Burdick, Law of Crime* (1946), sec. 329, pp. 489–490.

It has been said that while a defendant's belief in the truth of his statements can only be determined in the light of his own intent, a court cannot unqualifiedly accept that which the defendant asserts was his understanding at the time of the giving of the alleged false testimony. 102 *Univ. of Pa. L. Rev.* 251 (1953). The chief *raison d'etre* of evidentiary data regarding other persons' mental conclusions "rests on the high probability of a 'sufficiently' accurate representation of inner states by external conduct and the consequent validity of relevant findings of fact. * * *" *Hall, Principles of Criminal Law* (1947), pp. 177–180. *Cf. American Communications Ass'n v. Douds*, 339 *U. S.* 382, 410, 70 *S. Ct.* 674, 94 *L. Ed.* 925, 950 (1950); 2 *Wigmore on Evidence* (3rd ed. 1940), secs. 244, 256, 261.

Where belief in the truth of the statement is the issue all testimony which constitutes circumstantial evidence of the falsity of the defendant's statement has been said to be direct evidence of the defendant's belief. *Formulation in Terms of Belief of the Rule of Evidence Applicable to Perjury Cases*, 51 *Colum. L. Rev.* 1056, 1056–1057 (1951). See also 7 *Wigmore on Evidence* (3rd ed. 1940), sec. 2042, p. 281. Annotations 42 *A. L. R.* 1058, 1063; 27 *A. L. R.* 848, 857; 15 *A. L. R.* 629, 634.

 In prosecution for false swearing under *N. J. S.* 2*A* :131–4 et seq., "Corroboration or proof by more than one witness to establish the falsity of testimony or statements under oath is not required." *N. J. S. 2A* :131–6. The statute requires that the proof show that the false statement was willful, *i. e.*, "intentional and knowing the same to be false."

*N. J. S.* 2*A*:131–7.   In this respect we have heretofore clearly expressed the rule in *State v. Siegler,* 12 *N. J.* 520, 524 (1953), to be that the State's proof need not necessarily be by direct evidence but the burden may be met by circumstantial evidence.

■ There was adequate evidence in the present case to demonstrate for the purpose of disposition of the motions for judgment of acquittal on Indictment No. 221 at the close of the State's case that Doto was born in Italy and that he believed he was born in Italy, maintaining that belief at the time he swore before the grand jury that he was born in Passaic, New Jersey.

## III

Included in the questions involved is the rectitude of the trial court's rulings upon objections by the defendant to introduction of evidence by the State.   Dean Pound has said:

> "The question as to what is the truth easily becomes lost in critical scrutiny of proceedings at a trial in order to determine whether the technical rules of evidence were or were not observed. * * *" *Pound, Criminal Justice in America* (1945), *p.* 71.

Nevertheless we do not permit a sense of moral justice to overcome such error in this respect as may deprive a defendant of fair play.   Our review is expressly designed to ensure that the defendant is not deprived of liberty by any error that prejudices his substantial rights, *i. e.,* to ensure that the defendant does not suffer any manifest wrong or injury. *R. R.* 1:5–1(*a*).   *Cf. National Conference of Commissioners on Uniform State Laws, Uniform Rules of Evidence* (1953), *Rule* 4; *American Law Institute, Model Code of Evidence* (1942), *Rule* 6(*b*).

The defendant asserts that introduction of alleged hearsay testimony as to the defendant's pedigree and place of nativity was error.

█ A. There was received in evidence testimony of uncles and brothers of the defendant as to the names of his parents, their residences in Italy and in this country, the times of their arrival with their children in this country and of the defendant's residence here. The defendant asserts error in this respect without references to the specific testimony he condemns. Much of·the testimony of these family witnesses was direct, not hearsay. See 2 *Wigmore on Evidence* (*3rd ed.* 1940), *secs.* 265, 266, 270, *pp.* 87–91, 100 *et seq.* There was to some extent, however, reference to statements made by the defendant's mother and father who are, according to testimony, deceased. The declaration testimony elicited was within the rule in pedigree matters that "*   *   * where the evidence offered is the *declaration of an individual member* of the family, the necessity for this person's hearsay lies merely in the impossibility of procuring the declarant himself to testify on the stand; *i. e.,* the death   *   *   * of the *declarant alone* suffices   *   *   *." 5 *Wigmore on Evidence* (*3rd ed.* 1940), *sec.* 1481, *p.* 295. It did not include the decedent's declarations as to Doto's place of birth but only his parentage, which is permissible. *Independence Township v. Pompton,* 9 *N. J. L.* 209, 212–213 (*Sup. Ct.* 1827). Therefore we are not called upon to decide the entire scope of facts admissible under this exception to the hearsay rule but merely those that are pertinent to this action. See 5 *Wigmore on Evidence, ante, sec.* 1502, *pp.* 323–324. And the question of pedigree is material to the present case. *Ibid. sec.* 1503, *pp.* 324–325. *Cf. Westfield v. Warren,* 8 *N. J. L.* 249 (*Sup. Ct.* 1826). It is unnecessary to decide whether a limitation as to the kind of issue involved exists in this State as indicated in the *Westfield* case, *supra.*

█ B. The State also introduced in evidence manifests of the *SS. Citta DiMilano* which arrived in the Port of New York on May 9, 1904, of the *SS. Cretic* which arrived in the Port of New York on June 15, 1906, and of the *SS. Montserrat* which arrived in the Port of New York on July 11, 1909. The defendant's objection at the trial was two fold: that the manifests were not competent because their credi-

bility was lessened by other evidence in the case—an obvious *non sequitur*—and that the manifests were neither relevant nor material because "There isn't an issue here of where was Doto born" and "It becomes material only when it is established that he knew it." This alleged ground is clearly frivolous. However, the defendant on a subsequent motion to strike contended that the manifests were inadmissible hearsay evidence.

The State recognizes that the steamship manifests above referred to are a form of hearsay evidence but relies for their admissibility on the provisions of *N. J. S.* 2A:82–16, the pertinent portion of which reads as follows:

"* * * any duly certified public record of any department of the United States government * * * which is admissible in any federal court or by virtue of any federal statute to prove the facts therein contained, shall be admitted in evidence in the courts of this state, and shall be evidence of the facts therein contained, to the same extent as though the original paper or papers * * * had been produced and proved * * *."

A federal statute provides that "Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept." June 25, 1948, *c.* 646, 62 *Stat.* 946, 28 *U. S. C. A., sec.* 1733. And the federal act further provides that in any federal court "* * * any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in the regular course of business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event * * *" and "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility." June 25, 1948, *c.* 646, 62 *Stat.* 945, 28 *U. S. C. A.,*

*sec.* 1732. This legislation has been held to be constitutional. *Tot v. United States,* 319 *U. S.* 463, 63 *S. Ct.* 1241, 87 *L. Ed.* 1519 (1943). And it has been held that such legislation renders federal records admissible in evidence in the courts of this State. *Katz v. New York Life Insurance Co.,* 125 *N. J. L.* 358, 359 (*Sup. Ct.* 1940), affirmed *per curiam* 126 *N. J. L.* 370 (*E. & A.* 1941).

In *McInerney v. United States,* 143 *F.* 729, 736–737 (*1st Cir.* 1906), it was held that a verified copy of a ship's manifest containing a list of its alien immigrant passengers and giving their names, nationality, last residence and destination, delivered to the inspection officers of a port of the United States as a report under the Act of March 3, 1891, *c.* 551, *sec.* 8, 26 *Stat.* 1085, and preserved in the immigration office, is a public record admissible as evidence of the facts stated therein. The federal court in the *McInerney* case, *supra,* observed (143 *F.* at *page* 737):

"We perceive no substantial difference between the requirements of the statute here and those of the English statute, under which, upon very forcible reasoning, it was held in *Richardson v. Mellish,* 2 *Bing.* 229, that the list of passengers returned by the captain under the authority of the English act was admissible evidence as against third parties. The principle of the English case was apparently adopted with approval by the Supreme Court of the United States in *Buckley v. United States,* 4 *How.* 251, 258, 11 *L. Ed.* 961."

The United States Supreme Court in *Buckley v. United States, cit. supra,* held that customs appraisements were admissible in evidence and stated (4 *How.* at *page* 258, 11 *L. Ed.* at *page* 965):

"* * * the copy of an official document containing the names, capacities, and descriptions of passengers on board a vessel, made in pursuance of an act of Parliament, has been received as proof of such persons being on board. (*Richardson v. Mellish,* 1 *Ryan & Moody,* 68; 2 *Bing.* 229)."

Similarly a ship's log book has been held to be "clearly admissible" in evidence in a negligence case as proof of facts connected with the alleged occurrence. *Lopoczyk v. Chester*

*A. Poling, Inc.*, 152 *F.* 2d 457, 459–460 (*2nd Cir.*, 1945).
*Cf. The Ariel*, 119 *F.* 2d 866, 867 (*2nd Cir.*, 1941); 5 *Wigmore on Evidence* (*3rd ed.* 1940), *sec.* 1530, *pp.* 376 *et seq.; sec.* 1641, *pp.* 558, 559 (*esp. note* 6).

We conclude from the examination of the pertinent authorities that the ship's manifests were properly received in evidence in the present matter.

■ C. The defendant's trial objection to the introduction in evidence of Italian vital statistics records showing the births of five people was also overruled, and these exhibits were received in evidence. That they were relevant and material under the circumstances of this case seems so clear that no discussion of this point is necessary. The defendant also contended at the trial and on appeal that reception of these Italian records violated his constitutional rights: *N. J. S.* 2A:82–16, *supra*, in addition to the hereinbefore quoted provisions relating to federal records, provides that any "public record of any foreign state or territory, province, county or city, or of any court therein or any copy thereof, which is admissible in such state, territory, province, county or city, or in any court therein, to prove the facts therein contained * * * shall be admitted in evidence in the courts of this state * * *" etc., provided it shall be exemplified according to the acts of Congress of the United States. The requisite authentication under an act of Congress is expressed in the Act of June 25, 1948, *c.* 646, 62 *Stat.* 947, amended May 24, 1949, *c.* 139, *sec.* 92(*b*), 63 *Stat.* 103, 28 *U. S. C. A., sec.* 1741. As to constitutionality of this legislation, *Tot v. United States, supra*, is dispositive. Likewise, applicability in the courts of this State appears to be dispositively settled under the rationale of *Katz v. New York Life Insurance Co., supra*.

■ The defendant further contended that 28 *U. S. C. A., sec.* 1741, *supra*, was not complied with. The birth certificates of Guiseppantonio Doto and Antonio Doto are clearly properly identified and authenticated under the federal statute. The remaining three birth certificates were authenticated by the first president of the Court of Appeals of

Naples, Italy as an official act, and the vice-consul of the United States authenticated that jurist's act. This was an adequate compliance with 28 *U. S. C. A., sec.* 1741, *supra.* The defendant relied on *United States v. Grabina*, 119 *F.* 2*d* 863, 865 (*2nd Cir.* 1941) as authority to the contrary. In the *Grabina* case, *supra*, the decision turned on deficiencies inherent in a Polish birth certificate rather than on the vice-consul's authentication of the custodial depository officer's signature. No such defect appears here.

█ D. New York State census records for 1915 and 1925 were received in evidence at the trial over the defendant's objection that they were hearsay and there was no proof that Doto had knowledge of their contents. These objections have no merit. The defendant now contends that such records are not admissible in evidence in New York State and therefore are inadmissible under *N. J. S.* 2*A* :82–16, *supra*. No such objection was asserted before the trial court. The trial court may inform itself of foreign laws in such manner as it may deem proper. *N. J. S.* 2*A* :82–28. It does not appear in the record what source of New York law was examined by the trial court in this respect nor has the defendant demonstrated on this appeal that the trial court erred. The defendant alluded to *In re Hennion's Estate*, 131 *N. J. Eq.* 293, 294–295 (*Prerog.* 1942). The vice-ordinary in that case did not expressly exclude the evidence but held it was "not persuasive" because it lacked clarity and did not "indicate the source of its information." Comparable conclusions were expressed by the former Supreme Court in *Kiely v. MacMurray*, 5 *N. J. Misc.* 1091, 1093 (*Sup. Ct.* 1927), also relied on by the defendant.

We find no manifest wrong or injury sustained by the defendant in the reception of these census records, which were proved to be public records of the State of New York.

█ E. We find no merit in the defendant's contention that testimony of a New York police officer concerning prior admissions of the defendant as to the place of his birth should have been excluded.

■ F. The defendant also objected to the introduction of evidence by the State concerning admissions by the defendant, as to his place of birth, made during the course of his testimony at deportation proceedings in June 1943. The principal ground of objection was that the whole of Doto's testimony at the deportation proceedings was not offered by the state. The defendant's cross-examination of the witness who testified with respect to Doto's deportation hearing admissions resulted in introduction in the present case of the testimony that the defendant deemed essential. Under the circumstances we find no error. The remaining arguments of the defendant concerning this evidence are without merit.

## IV

■ The defendant's question whether he was denied a fair trial by injection of "inflammatory and prejudicial" proof was admitted by him to be a question not presented to the trial court. This question relates to evidence of prior arrests and fingerprinting. The trial court ordered stricken from the record the greater portion of this testimony. What remained was incidental disclosure of prior arrests during the course of a New York police officer's testimony concerning admissions by Doto as to the date of his birth. Under the circumstances of this case no error is disclosed. *Cf. State v. Grillo*, 11 *N. J.* 173, 183 (1952), *certiorari* denied 345 *U. S.* 976, 73 *S. Ct.* 1123, 97 *L. Ed.* 1391 (1953).

■ The arguments addressed to this court indicate the defendant also attacks the validity of the trial court's findings upon the ground that the determination was against the weight of the evidence. This was not asserted as a question involved. However, in view of the nature and course of the prosecution in the present case we have examined the record meticulously to determine whether the evidence supports the findings and judgment of the trial court. In this respect the evidence clearly is adequate and we see no occasion to recite it in detail.

## CONCLUSION

For the reasons expressed in this opinion the judgment of the Superior Court, Law Division, is affirmed.

WACHENFELD, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.