33 N.J. Super. 549 (1955)
111 A.2d 111
STATE OF NEW JERSEY, PLAINTIFF,
v.
PAUL HANLY, DEFENDANT.
Superior Court of New Jersey, Law Division (Criminal).
Decided January 18, 1955.
*550 Mr. Frederick T. Law, Prosecutor of Hudson County, attorney for the State (Mr. Julius D. Canter, Assistant County Prosecutor, of counsel).
Mr. John B. Graf, attorney for defendant (Mr. Harold Krieger, of counsel).
DREWEN, J.C.C. (temporarily assigned).
The Hudson County grand jury returned against this defendant an indictment purporting to charge him with the crime of false swearing under the provisions of N.J.S. 2A:131-4. Defendant moves to dismiss on the grounds, among others, that (a) the indictment fails to set forth a criminal offense; and (b) that it is contrary to law and violates the defendant's constitutional rights. The statute aforementioned provides:
"Any person who willfully swears falsely in any judicial proceeding or before any person authorized by any law of this state to administer an oath and acting within his authority, is guilty of false swearing and punishable as for a misdemeanor."
The indictment is in two counts. That part of the first count which is pertinent to our problem charges that the defendant
"then and there did willfully swear falsely, in substance and effect that he, the said Paul Hanly had not entered into any arrangement with one Richard J. McGrath on behalf of John W. McGrath Corporation, a corporation, whereby he, the said Paul Hanly, would receive 50% of any profits which the said John W. McGrath Corporation might earn and obtain on operations conducted by the said John W. McGrath Corporation in the State of New Jersey, he, the said Paul Hanly, having been then and there asked, while under oath as aforesaid, concerning the same as follows:
`Q. Now, Mr. Hanly, were you to receive 50% of the profits of the McGrath (referring to John W. McGrath Corporation) operations in the State of New Jersey?'
did willfully swear falsely:
`A. No, sir.'
and upon being further asked concerning the same:
`Q. Was there any percentage agreed on between Richard McGrath and yourself (referring to said Paul Hanly) concerning his (referring to said Richard J. McGrath) statement that you would be taken care of?'
*551 did willfully swear falsely:
`A. That was the only statement, the only agreement that was ever made.';
and upon being further asked concerning the same:
`Q. You then say there was no definite statement as to the percentage that you were to receive?'
did willfully swear falsely:
`A. No, sir.';
And so the Grand Jurors as aforesaid, upon their oaths aforesaid, do present that on the date, place and in the jurisdiction set forth herein, and in the manner and form aforesaid, the said Paul Hanly did willfully swear falsely, contrary to the provisions of N.J.S. 2A:131-4, against the peace of this State, the government and dignity of the same."
It becomes manifest at once, I think, that the first count fails to charge wherein the quoted testimony was false. True, the allegation is made that he "then and there did willfully swear falsely," but where the falsity lay is not shown. It is not possible to know the falsehood without knowing the truth, and the truth is not averred. The subject testimony embraces not one proposition of fact but several. One of these is embodied in the word "receive"; another in the amount of profit referred to; another in the limitation of the source of profit, both as to the corporate and the territorial limits of its origin. As a consequence, it must be said for the answer "No, sir" given to this multiple inquiry that it is not a denial so much as a negative pregnant, that is "a negation which may or does imply an affirmative." Webster's New Int. Dict. (2nd ed. 1948). For all that appears, apart only from the ineffectual allegation of falsity made by way of general conclusion, the answer was truthful. The want of verity in anything that the question contains, be it express or clearly implied, would justify the negative answer that was given to the question as a whole. Falsehood in the answer may certainly not be presumed. The only presumption allowed is that of defendant's innocence.
As to the second question in the testimony embodied in the first count, the question and answer taken together are so ambiguous and the answer itself so unresponsive that no charge of falsity is or can be predicated upon it, in the *552 absence of adequate matter of inducement. What the question asks is whether "any percentage" was agreed upon. The answer is "That was the only statement, the only agreement that was ever made." How or wherein this answer can be said to have been false is not alleged. And the third question and answer given in the quoted testimony deals solely with a "definite statement as to the percentage." Whether the answer "No, sir" is to be taken as directed to the definiteness of the percentage, or to the "statement" referred to, or, to the "percentage," or to all of these together, is not shown. An additional vice in the predication of false swearing upon the latter question and answer is in the double negative they present. Asked if he had said there was "no definite statement," the witness answers: "No, Sir," thus contradicting any possible theory of false swearing respecting such answer, clearly so in the absence of adequate matter of inducement.
The general charge that defendant did "swear falsely" is not only ambiguous but is rendered innocuous as well by virtue of its being a mere conclusion. In a situation of this kind particulars can serve no proper office since, in order to be informative at all, they would have to supply matter of substance essential to the projected accusation and concerning which the indictment is silent. Particulars are no substitute for an indictment, nor can they be employed to supplement the charge in respect to which it is substantively deficient (cases infra).
Coming now to the second count, so much of it as pertains to our problem charges that defendant
"did willfully swear falsely, in substance and effect, that a certain check for the payment of money drawn on the account of John W. McGrath Corporation in The Public National Bank and Trust Company of New York, to the order of him, the said Paul Hanly, in the sum of $1,000.00, and bearing date of October 11, 1949, had been received by him, the said Paul Hanly, from one, Richard J. McGrath, as a contribution to an alleged Christmas basket fund, he, the said Paul Hanly, having been then and there asked, while under oath, as aforesaid, concerning the same as follows:
`Q. What was the amount of that check (referring to the said check drawn on the account of John W. McGrath Corporation at The Public National Bank and Trust Company of New York, *553 payable to the order of the said Paul Hanly in the sum of $1,000.00 and dated October 11, 1949)?'
did testify:
`A. $1,000.00.';
and upon being further asked concerning the same:
`Q. What did you say that check was for (referring to the aforementioned check of said John W. McGrath Corporation)?'
did willfully swear falsely:
`A. I had gone to a Saints and Sinners rally with Dick (referring to the said Richard J. McGrath) and I told Dick "We have a Christmas basket fund coming up. We are having a dance. How about a contribution?", and he (referring to said Richard J. McGrath) said, "All right, I will give it to you in a day or so," and I think the next time I met him he gave me the check for $1,000.00.'
And so the Grand Jurors as aforesaid, upon their oaths aforesaid, do further present that on the said 12th day of March, 1953, at the place and in the jurisdiction set forth herein, and in the manner and form aforesaid, the said Paul Hanly did willfully swear falsely, contrary to the provisions of N.J.S. 2A:131-4, against the peace of this State, the government and dignity of the same."
The first question and answer that the second count recites have reference to the amount of the check, and on the face of it the answer given is manifestly true. As to the second question and answer, if the purpose of the check, which is what the question seeks to elicit, was not as the answer indicates, we are left only to guess at the truth that would render the answer false. In all other respects what has been said about the deficiency of the first count has corresponding application here.
The invalidity of the charge as made by this indictment becomes all the more apparent when we consider the proof that would be required to sustain it. Surely it would have to include the essential truth surrounding the respective subjects of the matter sworn to, and since averment of that truth forms no part of the indictment, the omission becomes thus the more obviously fatal.
Another aspect of defectiveness in the charge as made is its failure to identify, that is to particularize, the crime it is designed to charge. Identification of the particular crime *554 in view is a vital feature of a valid indictment and goes directly to defendant's protection against double jeopardy, as the cases (infra) make clear. If this indictment were permitted to stand, a trial upon one feature of alleged truth within its scope might well be antecedent to a second prosecution for another and different feature of alleged truth within the context of the charge, vague and indefinite as it is.
The decision that this indictment must be dismissed is not without full awareness of the responsibility that rests upon the court's discretion in the matter of dismissing indictments, nor of the cautionary precepts under this head expressed in the more recent cases. In State v. Weleck, 10 N.J. 355, at page 364 (1952), the court says:
"A motion to quash an indictment is addressed to the discretion of the trial court, * * * but the court's power to quash is not to be exercised except on `the clearest and plainest ground' * * * and an indictment should stand unless it is `palpably defective' * * *. `Such judicial discretion cannot be arbitrary, vague or fanciful but rather must be governed by and in accord with established principles of law' * * *."
See also State v. Winne, 12 N.J. 152, at pages 181-182 (1953). In State v. Engels, 32 N.J. Super. 1, at page 6 (App. Div. 1954), the court observes that "our procedural methodology" is undergoing a "more pragmatical readaptation"; and at page 7 of 32 N.J. Super.:
"* * * the legislative and judicial attitude toward the concise composition of indictments has become more liberal and the discretionary disinclination to quash them for vagueness and uncertainty has been manifest unless their palpable deficiency is obviously prejudicial to the defendant in the preparation and presentation of his defense. * * * An indictment is not regarded as insufficient for the lack of the allegation of any matter not necessary to be proved."
But all of which notwithstanding, our courts still do recognize, as they must, that fundamental rights and liberties of the accused are directly involved. In State v. Solomon, 97 N.J.L. 252, at page 257 (E. & A. 1922), the court said:
*555 "To resort to presumptions to cure fatally defective indictments would tend to incalculable evil and oppression, and in effect sanction violations of constitutional guaranties, namely, of the right of the accused to be informed of the nature of the accusation against him, and that he shall be tried for the offense as charged in the indictment by the grand jury. The fragile theory that a presumption may be raised in aid of an indictment which omits a constituent element of the statutory crime is shattered by the force of the familiar inflexible legal rules that no presumption of guilt arises from the mere finding of an indictment against an accused, and that there is a presumption of innocence which abides with an accused until his guilt is established by proof beyond a reasonable doubt."
See also State v. Borg, 9 N.J. Misc. 59, 61 (Sup. Ct. 1931); State v. Allgor, 78 N.J.L. 313, 314 (Sup. Ct. 1909).
In State v. Daly, 3 N.J. Super. 247, at page 250 (App. Div. 1949), the court said:
"* * * A person charged with a criminal offense by the solemn action of a grand jury is confronted with a situation involving potentially serious consequences. In such circumstances, it is imperative that the indictment fully inform the accused of the specific crime laid at his door so that he may be afforded every reasonable opportunity to prepare his defense; a right guaranteed by our Constitution and grounded in that fundamental fairness of due process of law. The language of the indictments under review does not satisfy the essential requirement of certainty and particularity, consistently recognized by our courts. * * *"
And in State v. DeVita, 6 N.J. Super. 344, at page 347 (App. Div. 1950), it was said:
"The essential facts constituting the crime must be directly stated in the indictment. The omission of an essential element cannot be supplied by inference or implication. * * * The uncertainty of the indictment is apparent. An indictment must be sufficiently certain to give assurance that the accused is not indicted for one offense and tried for another; that he may be able to prepare intelligently his defense; and that he may also be able to plead his conviction or acquittal in bar of another prosecution for the same offense. * * *."
See also State v. Lustig, 13 N.J. Super. 149 (App. Div. 1951), and cases cited therein.
*556 Cases holding emphatically to the doctrine that an indictment may leave no material element of its charge to intendment or implication include State v. Bleichner, 11 N.J. Super. 542 (App. Div. 1951); State v. Algor, 26 N.J. Super. 527 (App. Div. 1953); State v. Lombardo, 20 N.J. Super. 317, 321 (App. Div. 1952). The language of our Supreme Court in State v. Grothmann, 13 N.J. 90, 94, 97, 98 (1953), merits quotation at length:
"An indictment is amendable in form but not in substance. The substantive process is exclusively the grand jury's under the constitutional limitation cited supra. * * * It is the constitutional right of the accused in a criminal proceeding to be informed of the nature and cause of the accusation laid to him. * * * It is of the essence of the right that the accused be informed by the indictment in certain, definite and understandable terms of the crime charged to him, to enable him to prepare his defense and to be protected against double jeopardy. * * * This in its very nature required sufficient particularity to identify the crime laid to the accused. * * * It is requisite that the criminal act be charged in certain and identifiable form, if the accused is to have the substance of his constitutional right of defense and the opportunity to prepare for trial that is basic to that right, not to mention the danger of double jeopardy; and such was not the case here. The course taken (i.e., the trial judge's direction that the indictments be amended) constituted a denial of the essence of the constitutional guaranty."
One other decision demands attention. It is that of the Supreme Court in State v. Doto, 16 N.J. 397 (1954), wherein the indictment was sustained. There the defendant appealed from a conviction for false swearing, alleged to have been committed before the Bergen County grand jury respecting the place of his birth. The problem presented for review by our highest court is closely pertinent to the problem here, though different in form. The opinion states:
"The questions involved on this appeal include whether (a) an indictment is valid under N.J.S. 2A:131-4, N.J.S.A. (i.e., for false swearing) where it fails to contain explicit negation of the truth of the statements on which the indictment is based * * *." *557 The pertinent portion of the indictment there in question, as stated in the opinion, was:
"* * * and the said Joseph Doto, also known as Joe Adonis, being so sworn as aforesaid, did willfully swear falsely in substance and effect that he was born in the City of Passaic, County of Passaic and State of New Jersey, which said statement the said Joseph Doto, also known as Joe Adonis, then and there well knew was false, contrary to the form of the statute in such case made and provided, against the peace of this State, the government and dignity of the same."
As between the situation in the Doto case and that before us I judge the difference to be essential and complete. The testimonial statement there alleged was single and specific, viz., that his (Doto's) place of birth was the City of Passaic. The indictment charged that in so testifying he "did willfully swear falsely," and, additionally, that the testimony thus given the defendant "then and there well knew was false." So narrow was the scope of the subject testimony in the Doto case that the inescapable logic of the allegations of falsehood made it equally inescapable that in truth and in fact Doto's birthplace was not the City of Passaic but elsewhere, and to his knowledge. This the Supreme Court took to be direct and adequate negation of the truth of the testimony that provided the basis for the offense charged. There can be no doubt of the court's holding that direct and adequate negation had been made in the indictment before it. While the indictment now reviewed does not answer the question how and wherein the subject testimony is false, the corresponding question in the Doto case was answered in the very nature, in the singular and restricted scope, of the testimony given, coupled with the allegation of intent, knowledge and falsehood. Proof of the actual birthplace was not essential but merely incidental to the alleged basic untruth that his birthplace was Passaic.
It should also be observed that the deficiencies of the present indictment have to do not only with the requirement that the indictment make direct negation as in cases of perjury, but also with the fact that special circumstances here present *558 and having to do with the nature, extent and multiplicity of the testimonial matter renders adequate negation essential to the preservation of defendant's constitutional rights, preeminently that of protection against the hazard of double jeopardy.
The latest case on the general subject, that of State v. Sullivan, 33 N.J. Super. 138 (App. Div. 1954), has in the main no pertinence to the present question, but insofar as it has, the decision is consonant with the views hereinabove expressed.
The motion to dismiss is granted.