THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. FRANK N. BORRELL, DEFENDANT-APPELLANT.

Argued February 21, 1955—Decided March 14, 1955.

Mr. *James A. Major* argued the cause for appellant (*Mr. Joseph H. Gaudielle*, attorney).

Mr. *Ralph L. Fusco*, Deputy Attorney-General, argued the cause for the State (*Mr. Guy W. Calissi*, Bergen County Prosecutor, attorney).

The opinion of the court was delivered by

WACHENFELD, J. The Bergen County grand jury on March 10, 1953 was continuing an investigation and inquiry about matters concerning official misconduct and corruption.

The defendant was and had been for 30 years the chief of police of Cliffside Park in that county and was called before the grand jury for interrogation. He was asked whether he had ever made an "official inspection" of certain premises known as 452 Palisade Avenue, Cliffside Park, and denied ever having been there. In response to the following question, he gave a "No" answer:

"Q. * * * Were you or were you not ever on the premises known as 452 Palisade Avenue in Cliffside Park for the purpose of making an official inspection?"

The defendant was subsequently indicted by the grand jury under *N. J. S.* 2A:131–4 for false swearing in answer to the above question. The pertinent part of the indictment recites:

"* * * Frank Borrell, being so sworn as aforesaid, did willfully swear falsely in substance and effect that he never made an official inspection visit to the premises 452 Palisade Avenue, Borough of Cliffside Park, County of Bergen and State of New Jersey, which statement the said * * * Frank Borrell then and there well knew was false * * *."

At the trial, Stephen Toth, formerly an assistant prosecutor in Bergen County, testified that on November 2, 1945 he and the county chief of detectives went to Cliffside Park for the purpose of investigating certain addresses within that city based upon information they had received about gambling activities which were being carried on there. They had neither search warrant nor process of any kind.

First they went to Cliffside Park police headquarters to advise them of the inspection visits and to secure a local police officer to accompany them. Borrell was not at headquarters when Toth arrived but came in later and designated himself and Sergeant Hozer of the Cliffside Park police to accompany Toth and the county chief of detectives.

Toth told him:

"* * * we wanted him, together with any other man he wanted to take along, to come with us to make these inspections. We wanted local police to be there with us."

Toth apparently was the only one who knew the addresses to be inspected.

"Q. You wanted the element of surprise to work in your favor? A. As far as I was concerned, yes. * * *
Q. They didn't know where to go, you were the one to lead them to those places, Mr. Toth. Isn't that so? A. They didn't know where to go prior to our arriving there."

Their first stop, according to Toth, was at 452 Palisade Avenue, which was a two-story building having a store on the first floor, an entrance hallway alongside of it and an

apartment above. He said the store was closed and all of
the officers went into the entrance hall. The doors were
locked and there was not response from within.

Toth copied the name on the mailbox and he and the
officers returned to the street, where they peered inside the
store and observed a desk and other equipment on the prem-
ises. They then left and proceeded to other addresses in
the city.

Lennon, a witness for the State, testified over objection
that 452 Palisade Avenue at the time in question was being
used as part of Frank Erickson's bookmaking operations.

Another witness for the State, Delchop, testified his father
and Borrell were cousins. Delchop's father was shown to
have been the owner of the premises 452 Palisade Avenue,
and Delchop testified over objection that he had collected
rents from the tenant of the premises on behalf of his father.

Borrell, taking the stand in his own defense, testified on
the day in question he had accompanied Toth while the latter
was making an investigation of various addresses in Cliffside
Park. He stated he had not been informed of the purpose
of the inspection but gathered from his knowledge of such
transactions that it was for the purpose of checking book-
making activities. He flatly testified that on the day in
question the group never visited 452 Palisade Avenue. His
testimony was supported by Sergeant Hozer.

The jury returned a verdict of guilty, and from the judg-
ment of conviction the defendant appealed to the Appellate
Division. We granted certification on our own motion prior
to argument there.

The defendant argues first there was error committed in
the court's denying his motion for an acquittal at the end
of the State's case and at the end of the entire case. The
basis for the motion appears to be not so much a failure of
proof as an alleged deficiency in the indictment. Although
the indictment charges him with false swearing in that he
said he had never made an "official inspection visit" to 452
Palisade Avenue, nevertheless the indictment fails to allege
in what capacity he was then acting or the nature of the

"official inspection visit" which he is charged with having made.

The indictment would probably have been more meaningful and more artistically drawn had it recited that the so-called official inspection visit had been made in the course of his duties as chief of police. But the record shows the defendant was fully cognizant his police status was referred to.

■ The responsibility of a member of the police department is tersely set forth in *State v. McFeeley,* 136 *N. J. L.* 102, 108 (*Sup. Ct.* 1947):

"One of the fundamental duties of a police department, from chief of police to patrolman, is to be on the lookout for infractions of the law and to use due diligence in discovering and reporting them, and in a proper case arresting the perpetrator and lodging and prosecuting a proper complaint."

The constancy of the defendant's official obligation is best expressed by his own views in the record before us. When asked if he was on official duty, he responded: "I am always on official duty 24 hours a day." And again when he was queried: "Were you on duty that day when you made these other visits which you have admitted?" he responded: "I am always on duty, yes, sir."

■ The sufficiency of an indictment is to be determined in the light of the pertinent rules of court and judicial decisions. The fundamental requirement of the instrument is to inform the person charged of the nature of the offense lodged against him so he may adequately prepare his defense and at the same time be protected against another indictment for the same offense. *State v. LeFante,* 12 *N. J.* 505 (1953); *State v. Winne,* 12 *N. J.* 152, 178 (1953); *State v. Rios,* 17 *N. J.* 572.

■ The accused is possessed of a constitutional right to be informed by the indictment in certain, definite and understandable terms of the crime charged against him to enable him to prepare his defense and to be protected against double jeopardy. *State v. Grothmann,* 13 *N. J.* 90, 97 (1953).

■ In the case *sub judice* the defendant was not charged with official misconduct but with false swearing, which is a

statutory offense. The statutory language was used and explicitly apprised the defendant of the offense charged against him. *State v. Doto,* 16 *N. J.* 397, 403 (1954).

It cannot be successfully contended that the defendant here was in any way prejudiced by the failure to recite his official status in the indictment, nor can there be any doubt about his being placed in double jeopardy by reason of any vagueness exhibited in it.

The defect, if any, was a mere technicality and clearly comes within the scope of *R. R.* 1:5–1(*b*), which provides:

"No judgment given upon any indictment shall be reversed for any imperfection, omission, defect or lack of form, or for any error except such as shall have prejudiced the defendant in maintaining his defense upon the merits."

Furthermore, before the grand jury and at the trial Borrell emphatically denied ever having visited the specified premises on the day in question either in his official or private status. He did not equivocate about the classification of the visit. He insisted without qualification none had ever been made.

His visit was the gist of the charge made against him and his denial framed the issue which was decided by the jury.

The recent case of *State v. Hanly,* 33 *N. J. Super.* 549 (*Law Div.* 1955), is submitted to substantiate the defendant's position, but without passing on the merits of the decision there made, it is apparent from the context of the opinion that it fails in this purpose.

Distinguishing *State v. Doto, supra,* the court there pointedly comments (33 *N. J. Super.* at *page* 557):

"The testimonial statement there alleged was single and specific * * *. So narrow was the scope of the subject testimony in the *Doto* case that the inescapable logic of the allegations of falsehood made it equally inescapable that in truth and in fact Doto's birthplace was not the City of Passaic but elsewhere, and to his knowledge. * * * There can be no doubt of the court's holding that direct and adequate negation had been made in the indictment before it. While the indictment now reviewed does not answer the question how and wherein the subject testimony is false, the corresponding question in the *Doto* case was answered in the very nature, in the singular and restricted scope, of the testimony given, coupled with the allegation of intent, knowledge and falsehood."

The *Doto* case in the respects above emphasized is closely analogous to the situation presently confronting us, and we think it is dispositive of the issue raised.

As to the State's failure to prove Borrell was there on an "official inspection visit," what constitutes an "official inspection visit," it is urged, is a question of opinion, and since the officers were there without search warrants and simply looked at the name on the letter box and into the windows, Borrell was justified in stating he had never been there on an "official inspection visit."

■ This narrows the indictment to limits not justified by its terms, and this interpretation is not sustained by the defense submitted. Borrell accompanied Toth to 452 Palisade Avenue in his capacity as chief of police of Cliffside Park and not as a private citizen. He was cooperating with a fellow law enforcement official, and whether or not he had charge of the group making the investigation or had initiated it, it was still an investigation or an inspection by him in the course of his duties as chief of police as we, and the defendant himself, comprehend them.

■ The fact that they did not have search warrants is no ground for denying an "official inspection" was made. Search warrants would not have been necessary if the occupants of the premises had voluntarily admitted the officers or were seen actively committing acts prohibited by law, and even though the officers found nothing and simply looked into the windows and at the names, it was still properly classified as an "inspection."

Error is assigned relating to the admission of the testimony that the premises were used by Erickson as part of his gambling operation and the testimony by Delchop that he had collected rents from the tenant at the premises on behalf of his father. The defendant's brief alleges: "Erickson was a notorious bookmaker and gambler. This testimony was put in only to create atmosphere," and it is now urged such evidence was completely irrelevant and had no possible connection except to prejudice the defendant.

The State, on the other hand, contends all this was necessary in order to show the false swearing was willful.

Unless the evidence was relevant, it might well prove to be prejudicial. At the time of the defendant's appearance before the grand jury, that body was investigating gambling activities in its county and the relationship, if any, between such operations and municipal and county officials.

If the defendant had actual knowledge or valid reason to believe that the premises in question were being used for unlawful purposes and did nothing about it, he would be putting himself in a position where he might readily be charged with misfeasance or nonfeasance and possibly be indicted for criminal liability growing out of the official inaction.

The evidence was therefore relevant as indicative of the fact that the defendant had a compelling motive which induced him to swear falsely as to his knowledge of the premises in question and the activities there taking place.

By proving an objective for the false swearing, the State presented evidence from which the jury could logically infer the defendant intentionally answered contrary to the truth to prevent his involvement in other violations of the law.

Certainly the trial jury could draw legitimate inferences material to the issues presented from the fact that the premises were occupied by a "notorious bookmaker and gambler" and that the defendant's cousin owned the property at the time.

As to Delchop's collecting the rent, if it was immaterial as alleged, it was not prejudicial in view of the then state of the record, which we have justified.

The remaining objections deal with the refusal of the trial court to charge in accordance with defendant's requests Nos. 2, 3, 4 and 5.

No. 2 was a request to charge as to the difference between a statement of fact and opinion. Its basis was that if Borrell was of the opinion the visit with Toth was not an "official inspection visit," he would not be guilty.

 Such a position is not tenable in view of the defendant's testimony, flatly denying ever having made an inspection visit with Toth. Under the circumstances, no question of a difference of opinion was before the jury. In other words, if Borrell had testified he had gone to 452 Palisade Avenue, but when he gave evidence before the grand jury he had not considered this trip to be an "official inspection visit," then the distinction between fact and opinion might have been relevant. But having denied ever having gone there, he could not then request a charge to the jury which had no bearing on the facts before it.

Requests Nos. 3, 4 and 5 dealt with the law of search and seizure and were designed to impress upon the jury certain limitations on the rights of a police officer, including his right to enter private premises without a search warrant. The court adequately covered these aspects of the case in its charge when it instructed the jury that a police officer, on his own power and authority, cannot enter private premises for the purpose of determining whether the premises have been used in the past for illegal purposes, and can do so only through the employment of the search warrant.

In any event, there was never any question before the jury of an illegal entry having been made or contemplated by Toth or the defendant or any of the police officers. The requests to charge were therefore irrelevant.

The judgment of conviction below is affirmed.

*For affirmance*—Chief Justice VANDERBILT and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.